UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

William Shields, Laurie Bluhm, Charles Nix, Cheryl Mason, Ann Albertson, Peter Kokemueller, Linda Kloeckner, Laura Hapsch, Cheryl O'Fallon, Nancy Karls, Paige Miller, Carol Andraschko, Matthew Lorence, Susan Hayes Jacobson, Rick Marvig, Annette Olson, Robin Feenie, Ami Anderson, Paul Fazio, Kimberly Christ, Chris Muntifering, Behroze Mistry, Theresa Panchyshyn, Juanda White, Karen Cope, Jacki Filippi, Ivan Martinez, Karen Guerrieri, Jim Buccellato, Donald Blue, Jeffrey Carter, James Heflin, Michael Dickman, Janet Ehlers, Michael Murray, Michael Allard, Bruce Fiedler, Mark Iorio, Linda Wentzlaff, James Flanigan, Kimberly Haas, Executor of the Estate of Michael Haas, Jerry Bemrich, Joseph Rastetter, Denise Holtz, Sean Roberts, Elizabeth Mitchell, Cynthia Drantch, John Williams, Jeff Price, Carolyn Cooper, James Levi, Denise Klaverkamp, Carol Kline, Janet Polakiewicz, Ruth Meger, Gordon Deeds, Julie Dahly, Michelle Motto, Sharon Narog, Julie Fleischhacker, Karen Reger, and Jeff Funaro, for and in behalf of themselves and other persons similarly situated,

Plaintiffs,

v.

General Mills, Inc.,

Defendant.

Case No. 16-cv-954 (MJD/KMM)

**AMENDED COMPLAINT**

***Jury Trial Demanded***

---

# TABLE OF CONTENTS

INTRODUCTORY STATEMENT ..... 1
OVERVIEW ..... 2
PARTIES ..... 7
JURISDICTION ..... 8
FACTS ..... 9
General Mills' Project Catalyst Employee Terminations ..... 9
The Project Catalyst Release Agreement ..... 14
This Court's Earlier Order About the General Mills Release Agreement ..... 16
Plaintiff Linda Kloeckner ..... 17
Circumstances of the Other Named Plaintiffs ..... 18
Plaintiffs' EEOC Charges ..... 32
COUNT ONE: ADEA COLLECTIVE ACTION – DECLARATORY JUDGMENT – ADEA/OWBPA ..... 34
COUNT TWO: ADEA COLLECTIVE ACTION – DISPARATE TREATMENT AGE DISCRIMINATION ..... 40
COUNT THREE: INDIVIDUAL CLAIMS – ADEA DISPARATE TREATMENT ..... 42
COUNT FOUR: ADEA COLLECTIVE ACTION – DISPARATE IMPACT ..... 43
COUNT FIVE: INDIVIDUAL CLAIMS – ADEA DISPARATE IMPACT ..... 44
COUNT SIX: MHRA: DISPARATE TREATMENT AGE DISCRIMINATION – PLAINTIFF KLOECKNER ..... 46
COUNT SEVEN: MHRA: DISPARATE IMPACT AGE DISCRIMINATION – PLAINTIFF KLOECKNER ..... 46
COUNT EIGHT: MINN. STAT. § 181.81: DISMISSAL FOR AGE – PLAINTIFF KLOECKNER ..... 47
COUNT NINE: DECLARATORY JUDGMENT – NLRA ..... 48

As and for their Amended Complaint against Defendant General Mills, Inc. ("General Mills"), the above-named Plaintiffs, for and in behalf of themselves and other persons similarly situated, through their undersigned counsel, state and allege as follows:

## INTRODUCTORY STATEMENT

1. This case was commenced by 29 Plaintiffs in April 2016. Shortly afterward, the parties stipulated to a stay of proceedings in this case pending a decision on an appeal brought by General Mills from an October 2015 order issued in an earlier and related action in this Court, *McLeod v. General Mills, Inc*, Case No. 0:15-cv-00494-JRT-HB, 140 F. Supp. 3d 843 (D. Minn. 2015), *reversed in part by* ___ F.3d ___ (8th Cir. May 11, 2017).

2. That appeal was decided on May 11, 2017. With this Amended Complaint, Plaintiffs have amended their original Complaint to bring it into conformity with the recent Eighth Circuit decision in *McLeod*, which addressed some legal issues common to both cases. In this amended pleading:

- Count One for Declaratory Relief has been amended to allege specific facts that establish the actual case or controversy that provides jurisdiction to this Court.
- Counts Two through Five have been amended to note that those Plaintiffs who signed General Mills' Release Agreement with its arbitration provision concede that they must, and are, pursuing their ADEA claims (other than Count One) in individual arbitrations, and they request only a stay in this action.

- The claims of Plaintiff Linda Kloeckner, who never agreed to arbitrate any claim, are clarified.
- Additional facts have been added regarding those Plaintiffs who joined this action by filing timely Consent forms after the original Complaint, and who are now named as Plaintiffs in this Amended Complaint.
- And, finally, to preserve an argument about a legal issue that is now pending before the U.S. Supreme Court, the Plaintiffs who signed the Release Agreement assert a new declaratory judgment count (Count Nine), which asserts that the collective-action waiver provision that is part of the arbitration provision in the Release Agreement is contrary to and inconsistent with Section 7 of the National Labor Relations Act, 29 U.S.C. § 157, which guarantees to employees the right to engage in concerted activities for mutual aid and protection.

## OVERVIEW

3. General Mills terminated the employment of each of the 62 Plaintiffs named in the caption above in a 2014-15 company-wide reorganization and employee termination program that it called "Project Catalyst." Project Catalyst resulted in the terminations of hundreds of employees. It followed an earlier, 2012 company-wide reorganization and employee termination program at General Mills called "Project Refuel."

4. As is discussed further below, the Plaintiffs contend that, through Project Catalyst, General Mills engaged in a pattern or practice of age discrimination, and that it

discharged each Plaintiff because of age, in violation of the federal Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621, *et seq*. Plaintiff Linda Kloeckner, a Minnesota resident, also asserts age discrimination claims under Minnesota law based on many of the same facts that support her claims under the ADEA.

5. In both Project Refuel and Project Catalyst, General Mills informed the employees it was terminating that they would not receive any severance pay unless each signed a contract form drafted by General Mills, called "Release Agreement." The Release Agreement contains both a purported waiver of all claims by the employee and a separate arbitration provision, which also includes a collective action waiver. Those provisions in the Project Catalyst Release Agreements are identical to those provisions in the earlier Project Refuel Release Agreements.

6. The General Mills Release Agreement is misleading and inconsistent with the ADEA because it informed employees that the "exclusive" forum in which they could raise any challenge to the validity of their purported waiver of ADEA claims was in an arbitration proceeding on an individual (solo) basis, and not as part of a group or collective action. This statement is contrary to an express provision of the ADEA in which Congress directed that "[i]n any dispute that may arise over whether any of the requirements, conditions, and circumstances set forth [to obtain a "knowing and voluntary" waiver of ADEA claims] have been met, the party asserting the validity of a waiver shall have the burden of proving *in a court of competent jurisdiction* that a waiver was knowing and voluntary …." 29 U.S.C. § 626(f)(3) (emphasis added). Not only that, but this provision also purports to impose a penalty or limitation on the rights of similarly

situated employees under the ADEA to proceed collectively in seeking a court determination of this narrow issue.

7. Sixty-one of the 62 Plaintiffs in this case signed the Release Agreement. Plaintiff Linda Kloeckner did not. Each of the Plaintiffs who signed the Release Agreement is asserting a claim in this action under the ADEA (Count One) for a declaratory judgment to the effect that the waiver of ADEA claims in that Release Agreement was and is invalid because General Mills failed to comply with the statutory requirements to obtain a valid, "knowing and voluntary" waiver. There is an actual controversy over this issue because General Mills' counsel has recently asserted and confirmed that (i) General Mills asserts that the releases are valid and (ii) it will assert that defense in response to the ADEA claims of each Plaintiff who commences arbitration. (General Mills has also recently asserted that defense in an arbitration case commenced by one of the *McLeod* case plaintiffs.) These statements and actions threaten an actual and imminent injury to the Plaintiffs who signed the Release Agreement: the denial of their right under the ADEA to a court determination of this question, a very specific provision Congress added for the purpose of protecting older workers.

8. Moreover, while the Release Agreement states that such a claim must be resolved in arbitration, that proposition is directly contrary to the ADEA language, which states that "the party asserting the validity of a waiver [of ADEA claims] shall have the burden of proving in a court of competent jurisdiction that a waiver was knowing and voluntary." *Id.* This provision was the subject of this Court's October 2015 holding in *McLeod*, that "the plain language of Section 626(f)(3) clearly mandates that a dispute

over the validity of a waiver of substantive claims or rights under the OWBPA, like this case, shall be heard by a court, not an arbitral forum." 140 F. Supp. 3d at 854.[1]

9. Because the *McLeod* order denied a motion to compel arbitration, General Mills was permitted to bring an immediate appeal. While that appeal was pending, this action was commenced in the same court. Because the issues in the two cases are much the same, the parties here stipulated to stay proceedings in this case pending a decision on the *McLeod* appeal.

10. In its recent ruling in *McLeod*, the Eighth Circuit reversed in part. The court held that the arbitration provision in the Project Refuel Release Agreement was enforceable and that each Plaintiff who had signed the Release Agreement was required to pursue ADEA claims in an individual arbitration proceeding. May 11, 2017 Slip Op. at 5-7. The court also determined that the district court lacked jurisdiction to rule on the declaratory judgment count as the complaint in that case failed to allege that General Mills threatened to enforce "the ADEA claim waiver," and also did not assert any related "imminent injury." *Id*. at 8-9.

11. The Eighth Circuit did not address specifically Judge Tunheim's conclusion about the plain language of 29 U.S.C.§ 626(f)(3), but did note the "instruction" within that provision that "the party asserting the validity of a waiver [of ADEA claims] shall

---

[1] In *McLeod*, a group of persons who had been terminated by General Mills in Project Refuel asserted claims for age discrimination. The *McLeod* Plaintiffs who had signed the Release Agreement also brought a declaratory judgment count under the ADEA, which sought an order declaring that the Release Agreements were invalid to waive any ADEA claim.

have the burden of proving in a court of competent jurisdiction that a waiver was knowing and voluntary." *Id*. at 11. The appeals court also made clear that it did "not decide whether General Mills can assert the validity of its waiver in arbitration." *Id*.

12. Based on the Eighth Circuit ruling in *McLeod*, the Plaintiffs named above who signed the Release Agreement intend to pursue in individual arbitration proceedings their claims that General Mills engaged in a pattern or practice of age discrimination through Project Catalyst and that it violated the ADEA by terminating them. Those same persons, though, each seek in this action a declaratory judgment from this Court to the effect that the Release Agreement he/she signed did not contain any valid waiver of ADEA claims. This narrow issue is, according to the plain language of the ADEA, one that must be decided by a "court of competent jurisdiction," 29 U.S.C.§ 626(f)(3), and the Eighth Circuit has not concluded otherwise.

13. Plaintiff Kloeckner, who did not sign the Release Agreement, has not agreed to arbitrate any claims against General Mills. Kloeckner timely filed her own administrative charge alleging age discrimination by General Mills, and she has timely commenced in this action both federal and state law age discrimination claims against General Mills. Kloeckner asserts both individual and collective action claims alleging disparate treatment (intentional) age discrimination and disparate impact claims. Kloeckner intends to seek leave of Court for the issuance of notice of this action to other persons discharged as part of Project Catalyst who were then age 40 or over and who also did not sign the General Mills Release Agreement with its arbitration provision.

14. When an issue commenced in court is subject to being decided in arbitration, the Federal Arbitration Act provides that district courts "shall stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement." 9 U.S.C. § 3. In *McLeod*, the Eighth Circuit stated that the action could be stayed in the district court, in the discretion of the district court, pending the resolution of individual arbitration proceedings. Slip Op. at10.

15. In this case, while the ADEA claims of the Plaintiffs who signed the Release Agreement are being pursued in arbitration, those claims should be stayed in this action. Such a stay should not impact Kloeckner's claims or the claims of any others who did not sign the Release Agreement and who may opt in to this case.

**PARTIES**

16. Each of the former employees identified in the caption above was qualified for and held a full-time job as an employee with General Mills in 2014, each performed his/her job duties in a competent manner, and each was age 40 or older when General Mills notified him/her of his/her discharge as part of Project Catalyst.

17. After his discharge by General Mills in Project Catalyst, and after he had opted in to this action as a Plaintiff by filing a Consent on June 24, 2016, Plaintiff Michael L. Haas died on October 24, 2016. Kimberly Anne Haas of Mooresville, North Carolina, the widow of Michael L. Haas, is designated as the Executor of Michael L. Haas by his Last Will and Testament, dated April 1, 2009. Mr. Haas' ADEA claims survived his death, and those claims are now being pursued in this action by Mrs. Haas in her capacity as Executor of her former husband's probate estate.

18. Defendant General Mills, Inc. is a Delaware corporation with its headquarters located at 1 General Mills Boulevard, Golden Valley, Minnesota 55426.

**JURISDICTION**

19. General Mills is an "employer" within the meaning of that term as used in the ADEA and in the Minnesota Human Rights Act ("MHRA"), Minn. Stat. Ch. 363A.

20. The ADEA directs that it is unlawful for an employer (i) "to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age," or (ii) "to limit, segregate, or classify his employees in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's age." 29 U.S.C. § 623(a).

21. In another section of the ADEA, Congress provided, "An individual may not waive any right or claim under this chapter unless the waiver is knowing and voluntary," and that a "waiver may not be considered knowing and voluntary unless at a minimum" it satisfies the requirements set forth at subsections (A) through (H) of 29 U.S.C. § 626(f)(1)." 29 U.S.C. § 626(f)(1). In a related provision, Congress mandated that "the party asserting the validity of a waiver [of ADEA claims] shall have the burden of proving in a court of competent jurisdiction that a waiver was knowing and voluntary." 29 U.S.C.§ 626(f)(3).

22. In this case, on May 12, 2017, defense counsel confirmed that General Mills "believes in the enforceability of the Release Agreements," and said that General

Mills intends to assert release/waiver as a defense in each arbitration case commenced by a Plaintiff who signed the Release Agreement. These statements were confirmed in a follow-up exchange of email correspondence between counsel.

23. Later that same day, in a memorandum filed in this Court in support of a motion to dismiss this action, General Mills stated, "All but one of the above-named Plaintiffs accepted the severance package and signed a Release Agreement, which included a release of all claims including those under the Age Discrimination in Employment Act (ADEA)." (Doc. 34 at 1.)

24. Since General Mills has confirmed that it is asserting waiver as a defense to the ADEA claims of the above-named Plaintiffs who signed the Release Agreement, the Court in this case is presented with an actual controversy on the validity of the purported waivers of ADEA claims. This issue presents an actual threat of imminent injury to the Plaintiffs who signed the Release Agreement. Accordingly, this Court has jurisdiction to grant the declaratory judgment requested in Count One, below.

25. Because this action arises under the ADEA, 29 U.S.C. § 621, *et seq.*, jurisdiction is proper under 28 U.S.C. § 1331.

## FACTS

### General Mills' Project Catalyst Employee Terminations

26. In September 2014, General Mills announced to its employees it had begun a "strategic review, named Project Catalyst," which "involve[d] a comprehensive redesign of the company's organizational structure and processes." General Mills also disclosed that Project Catalyst was being coordinated and driven by a "cross-functional

team of experienced leaders," referred to as the "Project Management Office," which was "under the direction of a steering committee of executive leaders." General Mills also said, "Over the coming several months, this team will be guiding and driving the redesign, starting with General Mills' U.S. business, moving to functions that support the business, and then the company's corporate functions."

27. In that same month of September 2014, General Mills reported in a securities filing that it estimated that 700 to 800 jobs across its U.S. business would be impacted by Project Catalyst.

28. By December 2014, General Mills announced a mass layoff of hundreds of employees in connection with "Project Catalyst."

29. As was true with Project Refuel, General Mills' Project Catalyst employee terminations adversely affected persons age 40 or over at much higher rates than younger employees, and the risk of termination increased dramatically with increased employee age. A statistical p-value calculation performed on Project Catalyst employee termination data given by General Mills to the above-named Plaintiffs to ascertain the likelihood that such a correlation between age and risk of termination could have occurred if age (or a factor closely related to age) were not used in making the termination selection decisions generates a very tiny p-value of only 0.00000000000000022 ($2.2 \times 10^{-16}$), whereas any p-value smaller than 0.05 is deemed to be statistically significant and any p-value smaller than 0.01 is deemed to be highly statistically significant by professional statisticians.

30. For 549 terminations out of 5,296 employees identified on 18 partial disclosures given by General Mills to the named Plaintiffs in this case, aggregated, the

employees age 40 and over were terminated at a rate of 15.1% whereas those under age 40 were terminated at a rate of only 5.4%. The termination rate for employees 40 or older therefore was nearly three times higher than the termination rate for younger employees.

31. The rates of termination in the Project Catalyst terminations increased by steps with age—i.e., the older each employee was, the greater his/her risk of being terminated:




32. As part of its pattern or practice of age discrimination, General Mills discriminated against employees age 40 or over in terminations and hiring, and also with respect to job assignments, such as by demoting employees age 40 or over and by assigning younger employees to favorable positions. While the Project Catalyst terminations were occurring, General Mills simultaneously posted notices for open

positions in some of the same work groups from which employees were being terminated. General Mills filled many of these open positions with new hires who were younger than the terminated employees who had been performing those jobs. General Mills also directed some of the Plaintiffs, as well as others similarly situated who also were discharged as part of Project Catalyst, to train their younger replacements.

33. In a document prepared by General Mills and distributed to employees terminated as part of Project Catalyst, General Mills informed terminated persons that a "limited number of positions" could open in coming months and that "displaced" employees could apply for those positions if they had "Good standing and consistent ratings above 1.0," the support of their previous manager or function leader, and the candidate "met or exceeded the minimum requirements for the position." In the same document, though, in response to a question, "Can I apply for a position that is a traditional role for recent college graduates?," General Mills stated: "Displaced employees are not encouraged to consider traditional campus recruiting roles. These roles will continue to be filled by recent college graduates."

34. In or about July 2014, a Director of Quality for General Mills suggested to Plaintiff Peter Kokemueller during a one-on-one meeting that Kokemueller should resign his position as General Mills' lead recruiter at Kansas State University and turn over those duties to someone else in the department. Kokemueller was surprised by this statement because he had successfully recruited for General Mills a number of highly competent recruits from Kansas State University. When Kokemueller asked the Director

why Kokemueller should step down from the lead recruiter position, the Director said that "HR really likes to portray a younger image on campus recruiting."

35. As part of its pattern or practice of age discrimination related to Project Catalyst, General Mills also failed to consider its employees age 40 or over for employment opportunities, refused to transfer employees age 40 or over into open positions for which they were qualified, and refused to re-hire its former employees age 40 or over for comparable positions for which they applied and were qualified.

36. As part of its pattern or practice of age discrimination, General Mills also classified employees using a "9-block" system to rate or rank employees based on subjective criteria, including their "potential." General Mills also followed a practice of favoring those persons who it deemed to have the highest "potential" for promotion and staffing opportunities. This classification system and practice adversely affected older employees who, on information and belief, received lower scores on the subjective criterion of "potential" even if they were high performers in their jobs. By contrast, upon information and belief, General Mills favored younger employees when rating employees based on "potential." Because General Mills favored employees who it had assessed as having high "potential" for favored treatment with respect to new job opportunities, and disfavored those who had been given lower "potential" scores, General Mills' practices resulted in older employees receiving diminished and lesser opportunities for growth and advancement within their careers at General Mills than did younger employees, part of a systemic practice at General Mills favoring youth. Upon information and belief, it was impossible or virtually impossible for any employee at General Mills who was in his or

her mid-50s in age to be assessed as having high potential, even if the employee's job performance and personal characteristics were exemplary in all respects. The net effect was that General Mills did not consider employees age 55 or over for advancement, and General Mills had a company-wide approach to retirement, which anticipated and expected that employees would retire on or shortly after reaching their 55th birthday.

37. General Mills later informed the above-named Plaintiffs and other employees terminated in Project Catalyst that it used the criterion of employee "potential" as a factor as it decided which employees to terminate in Project Catalyst.

**The Project Catalyst Release Agreement**

38. As it had done with Project Refuel, General Mills notified employees terminated as part of Project Catalyst that they would not receive any severance pay unless each signed and returned a General Mills "Release Agreement."

39. The Release Agreement, in its second paragraph, states that the employee who signs releases all "causes of action" and "claims" against the company (including any claims under the ADEA). In the fourth paragraph, the Release Agreement states that, "in the event there is any dispute or claim arising out of or relating to the above release of claims, including, without limitation, any dispute about the validity or enforceability of the release or the assertion of any claim covered by the release, all such disputes or claims will be resolved exclusively through a final and binding arbitration on an individual basis and not in any form of class, collective or representative proceeding."

40. Through the arbitration provision in its Project Catalyst Release Agreement, General Mills imposed "limitations" or penalties on an individual's right to

challenge that agreement, including that the employee could do so "only on an individual basis," and "exclusively" in "binding arbitration" conducted pursuant to a set of arbitration rules selected by General Mills. These same limitations and penalties are in the Refuel Release Agreement.

41. In seeking to secure employee signatures on its Release Agreement, General Mills failed to inform the employees discharged in Project Catalyst in writing of "any class, unit, or group of individuals covered by such program." 29 U.S.C. § 626(f)(1)(H)(i).

42. General Mills also failed to provide the terminated employees with a complete and accurate disclosure of "the job titles and ages of all individuals eligible or selected for the program, and the ages of all individuals in the same job classification or organizational unit who are not eligible or selected for the program." 29 U.S.C. § 626(f)(1)(H)(ii). Although these Plaintiffs and other similarly situated persons were terminated as part of the same company-wide Project Catalyst group termination program, General Mills provided each of them with a disclosure that failed to provide company-wide information about job titles and ages of employees eligible for and selected for termination. Instead, General Mills gave terminated employees only partial disclosures that did not provide information about the job titles and ages of all persons terminated as part of Project Catalyst.

43. The disclosures given by General Mills did not define or identify the unit or group of employees covered by the disclosure, and also did not provide the numerical job

levels of the employees whose job titles and ages were listed, although that information was readily available to General Mills.

**This Court's Earlier Order About the General Mills Release Agreement**

44. As noted, in October 2015, in the *McLeod* case that arose from the 2012 Project Refuel employee terminations, this Court held that the statutory language of 29 U.S.C. § 626(f)(3), which states that the party asserting the validity of a waiver under the ADEA "shall have the burden of proving in a court of competent jurisdiction that a waiver was knowing and voluntary," is "plain language" that:

> requires General Mills to defend the validity of the plaintiffs' release agreements in court, not in an arbitral forum. It is a contrary congressional command precluding arbitration in the narrow circumstances presented in this case: a dispute over the validity of a waiver of substantive claims under the OWBPA's waiver requirements found in Section 626(f)(1). (*McLeod, et al. v. General Mills, Inc.*, 140 F. Supp. 3d at 843 (D. Minn. Oct. 23, 2015), *reversed in part on other grounds*, ___ F.3d ___ (8th Cir. 2017)).

45. In that order, while making clear that it was deferring a ruling on the question whether the Release Agreements were "knowing and voluntary," this Court observed that the plaintiffs had presented a "compelling argument that the release agreements did not meet the understandability requirements of Section 626(f)(1)(A) by seeming to foreclose the employees' ability to raise ADEA claims in court." 140 F. Supp. 3d at 854 n.6.

46. Neither of these specific points in Judge Tunheim's order were addressed by the Eighth Circuit's recent ruling, in which the court made clear that it did not "decide whether General Mills can assert the validity of its waiver in arbitration." Slip. Op. at 11.

**Plaintiff Linda Kloeckner**

47. Plaintiff Linda Kloeckner ("Kloeckner"), who resides in Eden Prairie, Minnesota, began employment with General Mills in 1981 in the company's mailroom.

48. By 2014, Kloeckner had advanced and held a position as Garnishment Specialist in General Mills' Payroll/Human Resources department. Kloeckner was qualified for this position and performed her job duties in a satisfactory and competent manner.

49. In January 2015, General Mills notified Kloeckner that her job as a Garnishment Specialist had been eliminated and that she was being terminated from employment. Kloeckner was then age 52 and had almost 34 years of service with General Mills. General Mills gave Kloeckner a Release Agreement, which Kloeckner did not sign.

50. A short time later, Kloeckner learned that General Mills had reassigned her job duties to three younger employees. Kloeckner also learned later in 2015 that General Mills had recorded that it still had an open Garnishment Specialist position at that time.

51. About two months after being notified of her termination by General Mills, Kloeckner applied for and was offered a lower-level, ICS Service Specialist Position in the Sales division at General Mills. In this position, Kloeckner has far less responsibility than she had in her Garnishment Specialist position and her salary is substantially lower. Upon information and belief, General Mills has since created one or more records that refer to Kloeckner's 2015 job change as a "demotion."

52. After filing her own timely, class-wide charge of age discrimination with the EEOC and MDHR, Kloeckner joined this action as a named Plaintiff on April 12, 2016, when the action was commenced.

**Circumstances of the Other Named Plaintiffs**

53. In December 2014, General Mills notified Plaintiff William Shields, who resides in Coon Rapids, Minnesota, that it was terminating his employment as a Senior Quality Manager as part of Project Catalyst. Shields was then age 57 and had more than 38 years of service with General Mills. Shields joined this action as a named Plaintiff on April 12, 2016.

54. In January 2015, General Mills notified Plaintiff Laurie Bluhm, who resides in Watertown, Minnesota, that it was terminating her employment as a Financial Associate as part of Project Catalyst. Bluhm was then age 52 and had more than 33 years of service with General Mills. Bluhm joined this action as a named Plaintiff on April 12, 2016.

55. In December 2014, General Mills notified Plaintiff Charles Nix, who resides in Strafford, Missouri, that it was terminating his employment as a Customer Account Manager as part of Project Catalyst. Nix was then age 58 and had more than 32 years of service with General Mills. Nix joined this action as a named Plaintiff on April 12, 2016.

56. In December 2014, General Mills notified Plaintiff Cheryl Mason, who resides in New Brighton, Minnesota, that it was terminating her employment as a Quality Manager as part of Project Catalyst. Mason was then age 56 and had more than 31 years

of service with General Mills. Mason joined this action as a named Plaintiff on April 12, 2016.

57. In December 2014, General Mills notified Plaintiff Ann Albertson, who resides in Deephaven, Minnesota, that it was terminating her employment as a Principal Nutrition Research Scientist as part of Project Catalyst. Albertson was then age 53 and had 30 years of service with General Mills. Albertson joined this action as a named Plaintiff on April 12, 2016.

58. In December 2014, General Mills notified Plaintiff Peter Kokemueller, who resides in Savage, Minnesota, that it was terminating his employment as a Product Manager as part of Project Catalyst. Kokemueller was then age 54 and had more than 29 years of service with General Mills. Kokemueller joined this action as a named Plaintiff on April 12, 2016.

59. In December 2014, General Mills informed Plaintiff Laura Hapsch, who then resided in Winsted, Minnesota, that it was terminating her employment as a Customer Trade Specialist as part of Project Catalyst. Hapsch was then age 52 and had over 28 years of service with General Mills. Hapsch joined this action as a named Plaintiff on April 12, 2016.

60. In January 2015, General Mills notified Plaintiff Cheryl O'Fallon, who resides in Jordan, Minnesota, that it was terminating her employment as a Senior Service Representative – Accounts Payable as part of Project Catalyst. O'Fallon was then age 58 and had about 26 years of service with General Mills. O'Fallon joined this action as a named Plaintiff on April 12, 2016.

61. In December 2014, General Mills notified Plaintiff Nancy Karls, who resides in Minnetonka, Minnesota, that it was terminating her employment as part of Project Catalyst. Karls was then age 53 and had about 25 years of service with General Mills. Karls joined this action as a named Plaintiff on April 12, 2016.

62. In November 2014, General Mills notified Plaintiff Paige Miller, who resides in Brooklyn Center, Minnesota, that it was terminating her employment as a Senior Customer Manager as part of Project Catalyst. Miller was then age 46 and had more than 24 years of service with General Mills. Miller joined this action as a named Plaintiff on April 12, 2016.

63. In January 2015, General Mills notified Plaintiff Carol Andraschko, who resides in Brooklyn Center, Minnesota, that it was terminating her employment as a Business Trade Manager as part of Project Catalyst. Andraschko was then age 50 and had over 23 years of service with General Mills. Andraschko joined this action as a named Plaintiff on April 12, 2016.

64. In December 2014, General Mills notified Plaintiff Matthew Lorence, who resides in Plymouth, Minnesota, that it was terminating his employment as a Packaging Technology Manager as part of Project Catalyst. Lorence was then age 56 and had over 23 years of service with General Mills. Lorence joined this action as a named Plaintiff on April 12, 2016.

65. In December 2014, General Mills notified Plaintiff Susan Hayes Jacobson, who resides in Edina, Minnesota, that it was terminating her employment as a Senior IP Manager as part of Project Catalyst. Jacobson was then age 50 and had about 23 years of

service with General Mills. Jacobson joined this action as a named Plaintiff on April 12, 2016.

66. In December 2014, General Mills notified Plaintiff Rick Marvig, who resides in Chaska, Minnesota, that it was terminating his employment as an Associate Quality Specialist as part of Project Catalyst. Marvig was then age 57 and had about 23 years of service with General Mills. Marvig joined this action as a named Plaintiff on April 12, 2016.

67. In December 2014, General Mills notified Plaintiff Annette Olson, who resides in Golden Valley, Minnesota, that it was terminating her employment as a Senior Quality Specialist II as part of Project Catalyst. Olson was then age 53 and had more than 22 years of service with General Mills. Olson joined this action as a named Plaintiff on April 12, 2016.

68. In December 2014, General Mills notified Plaintiff Robin Feenie, who resides in Hideout, Utah, that it was terminating his employment as a Key Account Manager as part of Project Catalyst. Feenie was then age 57 and had more than 22 years of service with General Mills. Feenie joined this action as a named Plaintiff on April 12, 2016.

69. In November 2014, General Mills notified Plaintiff Ami Anderson, who resides in Southlake, Texas, that it was terminating her employment as a Director of Marketing Excellence as part of Project Catalyst. Anderson was then age 47 and had more than 21 years of service with General Mills. Anderson joined this action as a named Plaintiff on April 12, 2016.

70. In December 2014, General Mills notified Plaintiff Paul Fazio, who resides in Eden Prairie, Minnesota, that it was terminating his employment as a Senior R&D Manager as part of Project Catalyst. Fazio was then age 49 and had more than 21 years of service with General Mills. Fazio joined this action as a named Plaintiff on April 12, 2016.

71. In December 2014, General Mills notified Plaintiff Kimberly Christ, who resides in New Brighton, Minnesota, that it was terminating her employment as a Finance Manager, Cash Management, as part of Project Catalyst. Christ was then age 47 and had nearly 20 years of service with General Mills. Christ joined this action as a named Plaintiff on April 12, 2016.

72. In December 2014, General Mills notified Plaintiff Chris Muntifering, who resides in Buffalo, Minnesota, that it was terminating his employment as a Senior Manager, Property & Sales/Use Tax, as part of Project Catalyst. Muntifering was then age 53 and had more than 19 years of service with General Mills. Muntifering joined this action as a named Plaintiff on April 12, 2016.

73. In December 2014, General Mills notified Plaintiff Behroze Mistry, who resides in Fresno, California, that it was terminating her employment as an R&D Director I as part of Project Catalyst. Mistry was then age 55 and had more than 17 years of service with General Mills. Mistry joined this action as a named Plaintiff on April 12, 2016.

74. In December 2014, General Mills notified Plaintiff Theresa Panchyshyn, who resides in Crystal, Minnesota, that it was terminating her employment as a Technical

Records Specialist as part of Project Catalyst. Panchyshyn was then age 60 and had more than 17 years of service with General Mills. Panchyshyn joined this action as a named Plaintiff on April 12, 2016.

75. In December 2014, General Mills notified Plaintiff Juanda White, who resides in Minneapolis, that it was terminating her employment as a Business Category Associate as part of Project Catalyst. White was then age 50 and had about 17 years of service with General Mills. White joined this action as a named Plaintiff on April 12, 2016.

76. In December 2014, General Mills notified Plaintiff Karen Cope, who resides in Minneapolis, that it was terminating her employment as a Documentation Specialist/Ingredient Project Manager as part of Project Catalyst. Cope was then age 56 and had about 15 years of service with General Mills. Cope joined this action as a named Plaintiff on April 12, 2016.

77. In December 2014, General Mills notified Plaintiff Jacki Filippi, who resides in Monaca, Pennsylvania, that it was terminating her employment as a Retail Sales Representative as part of Project Catalyst. Filippi was then age 63 and had more than 12 years of service with General Mills. Filippi joined this action as a named Plaintiff on April 12, 2016.

78. In December 2014, General Mills notified Plaintiff Ivan Martinez, who resides in Golden Valley, Minnesota, that it was terminating his employment as a Global Consumer Insights Manager as part of Project Catalyst. Martinez was then age 42 and

had more than 8 years of service with General Mills. Martinez joined this action as a named Plaintiff on April 12, 2016.

79. In December 2014, General Mills notified Plaintiff Karen Guerrieri, who resides in Warren, Ohio, that it was terminating her employment as a Retail Sales Representative as part of Project Catalyst. Guerrieri was then age 62 and had more than 7 years of service with General Mills. Guerrieri joined this action as a named Plaintiff on April 12, 2016.

80. In January 2015, General Mills notified Plaintiff Jim Buccellato, who resides in Blaine, Minnesota, that it was terminating his employment as an HVC Specialist as part of Project Catalyst. Buccellato was then age 50 and had more than 7 years of service with General Mills. Buccellato joined this action as a named Plaintiff on April 12, 2016.

81. In December 2014, General Mills notified Plaintiff Donald Blue, who resides in Edina, Minnesota, that it was terminating his employment as a Trade Leader – Senior Manager as part of Project Catalyst. Blue was then age 59 and had more than 36 years of service with General Mills. Blue joined this action on August 30, 2016, by filing his Consent and is named as a Plaintiff in this Amended Complaint.

82. In December 2014, General Mills notified Plaintiff Jeffrey Carter, who resides in Plymouth, Minnesota, that it was terminating his employment as a Category Development Manager as part of Project Catalyst. Carter was then age 58 and had more than 35 years of service with General Mills. Carter joined this action on October 17, 2016, by filing his Consent and is named as a Plaintiff in this Amended Complaint.

83. In November 2014, General Mills notified Plaintiff James Heflin, who resides in Wayzata, Minnesota, that it was terminating his employment as a C-Store Strategic Growth Initiatives Director as part of Project Catalyst. Heflin was then age 59 and had more than 34 years of service with General Mills. Heflin joined this action on August 30, 2016, by filing his Consent and is named as a Plaintiff in this Amended Complaint.

84. In November 2014, General Mills notified Plaintiff Michael Dickman, who resides in Rockford, Minnesota, that it was terminating his employment as a Senior Category Development Manager as part of Project Catalyst. Dickman was then age 57 and had more than 33 years of service with General Mills. Dickman joined this action on June 17, 2016, by filing his Consent and is named as a Plaintiff in this Amended Complaint.

85. In January 2015, General Mills notified Plaintiff Janet Ehlers, who resides in Minneapolis, that it was terminating her employment as a Business Development Manager as part of Project Catalyst. Ehlers was then age 56 and had more than 33 years of service with General Mills. Ehlers joined this action on June 9, 2016, by filing her Consent and is named as a Plaintiff in this Amended Complaint.

86. In January 2015, General Mills notified Plaintiff Michael Murray, who resides in Plymouth, Minnesota, that it was terminating his employment as a Senior Manager Continuous Improvement as part of Project Catalyst. Murray was then age 54 and had more than 32 years of service with General Mills. Murray joined this action on

July 20, 2016, by filing his Consent and is named as a Plaintiff in this Amended Complaint.

87. In December 2014, General Mills notified Plaintiff Michael Allard, who resides in Plymouth, Minnesota, that it was terminating his employment as a Logistics Operations Director as part of Project Catalyst. Allard was then age 55 and had more than 32 years of service with General Mills. Allard joined this action on September 15, 2016, by filing his Consent and is named as a Plaintiff in this Amended Complaint.

88. In December 2014, General Mills notified Plaintiff Bruce Fiedler, who resides in River Forest, Illinois, that it was terminating his employment as a National Account Manager as part of Project Catalyst. Fiedler was then age 62 and had more than 30 years of service with General Mills. Fiedler joined this action on August 30, 2016, by filing his Consent and is named as a Plaintiff in this Amended Complaint.

89. In November 2014, General Mills notified Plaintiff Mark Iorio, who resides in Plymouth, Minnesota, that it was terminating his employment as a Director Retail & Support Operations as part of Project Catalyst. Iorio was then age 57 and had more than 31 years of service with General Mills. Iorio joined this action on June 9, 2016, by filing his Consent and is named as a Plaintiff in this Amended Complaint.

90. In February 2015, General Mills notified Plaintiff Linda Wentzlaff, who resides in Henderson, Minnesota, that it was terminating her employment as a Lead Service Coordinator as part of Project Catalyst. Wentzlaff was then age 56 and had more than 31 years of service with General Mills. Wentzlaff joined this action on October 28, 2016, by filing her Consent and is named as a Plaintiff in this Amended Complaint.

91. In December 2014, General Mills notified Plaintiff James Flanigan, who resides in North Wales, Pennsylvania, that it was terminating his employment as a Key Account Manager as part of Project Catalyst. Flanigan was then age 55 and had more than 31 years of service with General Mills. Flanigan joined this action on July 8, 2016, by filing his Consent and is named as a Plaintiff in this Amended Complaint.

92. In December 2014, General Mills notified Plaintiff Michael Haas, who resided in Mooresville, North Carolina, that it was terminating his employment as a Key Account Manager as part of Project Catalyst. Haas was then age 52 and had more than 29 years of service with General Mills. Haas joined this action on June 24, 2016, by filing his Consent. As noted above, Mr. Haas died in October 2016, and his claims are now being pursued by his widow, Kimberly Haas, who is executor of Mr. Haas' probate estate.

93. In December 2014, General Mills notified Plaintiff Jerry Bemrich, who resides in Scottsdale, Arizona, that it was terminating his employment as a Sales Development Manager as part of Project Catalyst. Bemrich was then age 59 and had more than 28 years of service with General Mills. Bemrich joined this action on June 9, 2016, by filing his Consent and is named as a Plaintiff in this Amended Complaint.

94. In November 2014, General Mills notified Plaintiff Joseph Rastetter, who resides in Maple Grove, Minnesota, that it was terminating his employment as a National Distribution Director as part of Project Catalyst. Rastetter was then age 53 and had more than 28 years of service with General Mills. Rastetter joined this action on January 16, 2017, by filing his Consent and is named as a Plaintiff in this Amended Complaint.

95. In November 2014, General Mills notified Plaintiff Denise Holtz, who resides in Eden Prairie, Minnesota, that it was terminating her employment as GEAR Program Director as part of Project Catalyst. Holtz was then age 50 and had more than 28 years of service with General Mills. Holtz joined this action on August 30, 2016, by filing her Consent and is named as a Plaintiff in this Amended Complaint.

96. In December 2014, General Mills notified Plaintiff Sean Roberts, who resides in Minnetonka, Minnesota, that it was terminating his employment as a Senior Marketing Manager as part of Project Catalyst. Roberts was then age 49 and had more than 26 years of service with General Mills. Roberts joined this action on December 1, 2016, by filing his Consent and is named as a Plaintiff in this Amended Complaint.

97. In January 2015, General Mills notified Plaintiff Elizabeth Mitchell, who resides in La Crosse, Wisconsin, that it was terminating her employment as a Logistics Business Planner as part of Project Catalyst. Mitchell was then age 59 and had more than 19 years of service with General Mills. Mitchell joined this action on June 9, 2016, by filing her Consent and is named as a Plaintiff in this Amended Complaint.

98. In December 2014, General Mills notified Plaintiff Cindy Drantch, who resides in Shorewood, Minnesota, that it was terminating her employment as R&D Manager ICE Team/S&I as part of Project Catalyst. Drantch was then age 54 and had more than 26 years of service with General Mills. Drantch joined this action on March 24, 2017, by filing her Consent and is named as a Plaintiff in this Amended Complaint.

99. In January 2015, General Mills notified Plaintiff John Williams, who resides in Florissant, Missouri, that it was terminating his employment as a Transportation Operations Manager as part of Project Catalyst. Williams was then age 59 and had more than 25 years of service with General Mills. Williams joined this action on July 20, 2017, by filing his Consent and is named as a Plaintiff in this Amended Complaint.

100. In December 2014, General Mills notified Plaintiff Jeffrey Price, who resides in Vancouver, Washington, that it was terminating his employment as an Account Manager as part of Project Catalyst. Price was then age 53 and had more than 25 years of service with General Mills. Price joined this action on June 30, 2016, by filing his Consent and is named as a Plaintiff in this Amended Complaint.

101. In December 2014, General Mills notified Plaintiff Carolyn Cooper, who resides in Crystal, Minnesota, that it was terminating her employment as a Channel Marketing Project Manager as part of Project Catalyst. Cooper was then age 52 and had more than 24 years of service with General Mills. Cooper joined this action on June 24, 2016, by filing her Consent and is named as a Plaintiff in this Amended Complaint.

102. In November 2014, General Mills notified Plaintiff James Levi, who resides in Plymouth, Minnesota, that it was terminating his employment as a Business Solutions Director as part of Project Catalyst. Levi was then age 45 and had more than 23 years of service with General Mills. Levi joined this action on August 3, 2016, by filing his Consent and is named as a Plaintiff in this Amended Complaint.

103. In or about December 2014, General Mills notified Plaintiff Denise Klaverkamp, who resides in Clearwater, Minnesota, that it was terminating her employment as a Consumer Insight Manager as part of Project Catalyst. Klaverkamp was then age 45 and had more than 22 years of service with General Mills. Klaverkamp joined this action on June 9, 2016, by filing her Consent and is named as a Plaintiff in this Amended Complaint.

104. In December 2014, General Mills notified Plaintiff Carol Kline, who resides in New Hope, Minnesota, that it was terminating her employment as an Administrative Assistant as part of Project Catalyst. Kline was then age 50 and had more than 19 years of service with General Mills. Kline joined this action on August 30, 2016, by filing her Consent and is named as a Plaintiff in this Amended Complaint.

105. In December 2014, General Mills notified Plaintiff Janet Polakiewicz, who resides in Vadnais Heights, Minnesota, that it was terminating her employment as a Customer Accounts Receivable Specialist as part of Project Catalyst. Polakiewicz was then age 46 and had more than 18 years of service with General Mills. Polakiewicz joined this action on June 9, 2016, by filing her Consent and is named as a Plaintiff in this Amended Complaint.

106. In December 2014, General Mills notified Plaintiff Ruth Meger, who resides in Richfield, Minnesota, that it was terminating her employment as a Senior Paralegal as part of Project Catalyst. Meger was then age 57 and had more than 16 years of service with General Mills. Meger joined this action on June 9, 2016, by filing her Consent and is named as a Plaintiff in this Amended Complaint.

107. In November 2014, General Mills notified Plaintiff Gordon Deeds, who resides in Greensboro, Georgia, that it was terminating his employment as a Senior Customer Manager as part of Project Catalyst. Deeds was then age 54 and had more than 17 years of service with General Mills. Deeds joined this action on June 17, 2016, by filing his Consent and is named as a Plaintiff in this Amended Complaint.

108. In December 2014, General Mills notified Plaintiff Julie Dahly, who resides in Farmington, Minnesota, that it was terminating her employment as an HR Specialist as part of Project Catalyst. Dahly was then age 47 and had more than 16 years of service with General Mills. Dahly joined this action on June 9, 2016, by filing her Consent and is named as a Plaintiff in this Amended Complaint.

109. In December 2014, General Mills notified Plaintiff Michelle Motto, who resides in Minneapolis, that it was terminating her employment as a Senior Scientist II as part of Project Catalyst. Motto was then age 58 and had more than 10 years of service with General Mills. Motto joined this action on June 9, 2016, by filing her Consent and is named as a Plaintiff in this Amended Complaint.

110. In January 2015, General Mills notified Plaintiff Sharon Narog, who resides in Maple Grove, Minnesota, that it was terminating her employment as an Administrative Assistant as part of Project Catalyst. Narog was then age 58 and had more than 9 years of service with General Mills. Narog joined this action on September 27, 2016, by filing her Consent and is named as a Plaintiff in this Amended Complaint.

111. In January 2015, General Mills notified Plaintiff Julie Fleischhacker, who resides in Brooklyn Park, Minnesota, that it was terminating her employment as a Digital

Asset Librarian, Assistant Manager as part of Project Catalyst. Fleischhacker was then age 45 and had more than 8 years of service with General Mills. Fleischhacker joined this action on April 3, 2017, by filing her Consent and is named as a Plaintiff in this Amended Complaint.

112. In January 2015, General Mills notified Plaintiff Karen Reger, who resides in Bloomington, Minnesota, that it was terminating her employment as an IT Consultant I as part of Project Catalyst. Reger was then age 53 and had more than 6 years of service with General Mills. Reger joined this action on June 9, 2016, by filing her Consent and is named as a Plaintiff in this Amended Complaint.

113. In January 2015, General Mills notified Plaintiff Jeffrey Funaro, who resides in Zimmerman, Minnesota, that it was terminating his employment as an IS Security Analyst as part of Project Catalyst. Funaro was then age 50 and had more than 4 years of service with General Mills. Funaro joined this action on June 9, 2016, by filing his Consent and is named as a Plaintiff in this Amended Complaint.

**Plaintiffs' EEOC Charges**

114. After being notified of termination due to Project Catalyst, each of the following named Plaintiffs filed with the EEOC a class-wide administrative charge alleging a pattern or practice of age discrimination by General Mills in connection with Project Catalyst: Ann Albertson, Karen Cope, Susan Hayes Jacobson, Linda Kloeckner, Peter Kokemueller, Matthew Lorence, Rick Marvig, Cheryl Mason, Chris Muntifering, Charles Nix, Cheryl O'Fallon, Annette Olson, Theresa Panchyshyn, William Shields and Juanda White.

115. Plaintiff Linda Kloeckner also cross-filed her charge with the Minnesota Department of Human Rights.

116. One or more of these charges alleged:

- that General Mills engaged in a pattern or practice of age discrimination in connection with its Project Catalyst;
- that the charging party and other persons similarly situated were involuntarily terminated from employment with General Mills as part of a pattern or practice of age discrimination by General Mills;
- that General Mills misled the charging parties and others similarly situated about signing the General Mills "Release Agreement" form by providing them with misleading, incomplete and inaccurate information; and,
- that the Release Agreement form signed by some of the named Plaintiffs and by others similarly situated does not contain an effective waiver of ADEA claims because any such waiver was not "knowing and voluntary" as defined in the OWBPA.

117. Each of the Plaintiffs named in the caption above either timely filed a class-wide administrative charge or is "piggybacking" on one or more of the multiple timely-filed class-wide administrative charges that relate to Project Catalyst.

118. On information and belief, the EEOC has attempted to conduct a systemic investigation of the pattern or practice of age discrimination by General Mills that was reported in the charges filed by multiple Plaintiffs, but has been stymied in its efforts because General Mills failed to provide requested information.

119. More than 60 days have passed since the above-referenced EEOC charges were filed.

**COUNT ONE:**
**ADEA COLLECTIVE ACTION – DECLARATORY JUDGMENT – ADEA/OWBPA**

120. Plaintiffs incorporate by reference the preceding paragraphs.

121. Congress provided that the ADEA is to be "enforced in accordance with the powers, remedies, and procedures provided in" Section 16(b) of the Fair Labor Standards Act of 1938, as amended. 29 U.S.C. § 626(b). That section states that aggrieved persons who are "similarly situated" are entitled to proceed together in one action. 29 U.S.C. § 216(b). The Supreme Court has held that, by incorporating 29 U.S.C. § 216(b), the ADEA "expressly authorizes employees to bring collective action age discrimination actions, in behalf of ... themselves and other employees similarly situated." *Hoffman-La Roche Inc. v. Sperling*, 493 U.S. 165, 170 (1998) (quoting 29 U.S.C. § 216(b)). The *Sperling* Court said:

> Congress has stated its policy that ADEA plaintiffs should have the opportunity to proceed collectively. A collective action allows age discrimination plaintiffs the advantage of lower individual costs to vindicate rights by the pooling of resources. The judicial system benefits by efficient resolution in one proceeding of common issues of law and fact arising from the same alleged discriminatory activity. (*Id*. at 173.)

122. This count presents a collective action under 29 U.S.C. § 626(b) and 29 U.S.C. § 216(b) by the above-named Plaintiffs (other than Plaintiff Kloeckner) in behalf of themselves and other persons similarly situated who may later opt in to this action. These Plaintiffs are similarly situated to one another in that each was employed by General Mills in the autumn of 2014 in a full-time job and was then age 40 or over, each was performing his/her job satisfactorily, General Mills involuntarily terminated each

from employment in late 2014 or 2015 as part of Project Catalyst, and General Mills notified each one that he/she was required to sign the same "Release Agreement" to be eligible to receive any severance pay, and each subsequently signed a Release Agreement.

123. The ADEA was amended in 1990 with the enactment of the Older Workers Benefit Protection Act ("OWBPA"), which is codified in part at 29 U.S.C. § 626(f). Congress enacted the OWBPA to ensure "that older workers are not coerced or manipulated into waiving their rights to seek legal relief under the ADEA." S. Rep. No. 101-263, at 4 (1990), reprinted in part in 1990 U.S.C.C.A.N. 1509, 1510.

124. As noted above, under the ADEA/OWBPA, an employee may not waive a claim under the ADEA "unless the waiver is knowing and voluntary," and that a "waiver may not be considered knowing and voluntary unless at a minimum" it satisfies the requirements set forth at subsections (A) through (H) of 29 U.S.C. § 626(f)(1). 29 U.S.C. § 626(f)(1). To protect older workers, Congress also specified that "[i]n any dispute that may arise over whether any of the" requirements to obtain a "knowing and voluntary" waiver "have been met, the party asserting the validity of a waiver shall have the burden of proving in a court of competent jurisdiction that a waiver was knowing and voluntary …." 29 U.S.C. § 626(f)(3). The U.S. Equal Employment Opportunity Commission ("EEOC") has recognized that "the plain language" of this provision manifests an intention to permit employees who have signed a purported waiver of ADEA rights or claims "to sue his or her employer upon the belief that the waiver did not comply." 65 Fed. Reg. 77438, 77443-44 (Dec. 11, 2000).

125. The U.S. Supreme Court has recognized that "[t]he OWBPA implements Congress' policy via a strict, unqualified statutory stricture on waivers, and we are bound to take Congress at its word," and that "[t]the OWBPA sets up its own regime for assessing the effect of ADEA waivers, separate and apart from contract law." *Oubre v. Entergy Operations, Inc.*, 522 U.S. 422, 427 (1998). In *Oubre*, the Court held that a purported general release of claims "can have no effect on [an employee's] ADEA claim unless it complies with the OWBPA." *Id*.

126. Among the requirements to obtain a "knowing and voluntary" waiver of a claim under the ADEA is that "the waiver is part of an agreement between the individual and the employer that is written in a manner calculated to be understood by such individual, or by the average individual eligible to participate." 29 U.S.C. § 626(f)(1)(A). A related regulation adopted by the EEOC states: "No ADEA waiver agreement … may impose any condition precedent, any penalty, or any other limitation adversely affecting any individual's right to challenge the agreement." 29 C.F.R. § 1625.23(b). In commentary issued with respect to this regulation, the EEOC has said, "Thus, any provision in a waiver agreement that would cause an employee to believe he or she could not seek a judicial determination of the validity of the waiver misrepresents the rights and obligations of the parties to the agreement. Such a misrepresentation conflicts with the OWBPA requirement that a valid waiver agreement must be written in a manner calculated to be understood by the employee or by the average individual eligible to participate." *Waivers of Rights and Claims: Tender Back of Consideration*, 65 Fed. Reg. 77438, 77444 (Dec. 11, 2000).

127. In *McLeod*, in October 2015, this Court, while making clear that it was deferring a ruling on the question whether the General Mills Release Agreements were "knowing and voluntary," nonetheless noted that the plaintiffs in that case had presented a "compelling argument that the release agreements did not meet the understandability requirements of Section 626(f)(1)(A) by seeming to foreclose the employees' ability to raise ADEA claims in court." *McLeod* 10/23/15 Order at 22 n.6.[2]

128. Another OWBPA requirement for an ADEA waiver to be "knowing and voluntary" is that the employer must inform the "the individual in writing in a manner calculated to be understood by the average individual eligible to participate, as to—

> (i) any class, unit, or group of individuals covered by such program, any eligibility factors for such program, and any time limits applicable to such program; and
>
> (ii) the job titles and ages of all individuals eligible or selected for the program, and the ages of all individuals in the same job classification or organizational unit who are not eligible or selected for the program." (29 U.S.C. § 626(f)(1)(H).)

An employer's failure to provide employees with an accurate disclosure on these points renders any purported waiver signed by an employee ineffective with respect to any rights or claims under the ADEA.

129. A related regulation, which relates to the content of disclosures to be provided to discharged employees, states:

> In a termination of persons in several established and/or other established subcategories within a job category or job title, the information shall be

---

[2] The Eighth Circuit did not address this aspect of the district court's order in *McLeod*.

> broken down by grade level or other subcategory. (29 C.F.R. § 1625.22(f)(4)(ii).)

Accordingly, if an employer classifies its employees into established job levels yet fails to include job level information in an OWBPA disclosure, the disclosure fails to comply and, as a result, any waiver obtained from an employee who was given the incomplete disclosure is not "knowing and voluntary."

130. Another regulation confirms that an employee who challenges whether a waiver agreement is "knowing and voluntary" under the ADEA "is not required to tender back the consideration given for that agreement before filing either a lawsuit or charge of discrimination," and that "[r]etention of consideration does not foreclose a challenge to any waiver agreement," nor does it "constitute the ratification of any waiver agreement …." 29 C.F.R. § 1625.23(a).

131. As noted above, General Mills' counsel of record in this case has confirmed within the past few weeks, and following the issuance of the recent Eighth Circuit opinion in *McLeod*, that General Mills "believes in the enforceability of the Release Agreements," and that General Mills intends to assert release/waiver as a defense in each arbitration case commenced by a Plaintiff who signed the Release Agreement. General Mills also, on May 12, 2017, stated in a memorandum filed with the Court, "All but one of the above-named Plaintiffs accepted the severance package and signed a Release Agreement, which included a release of all claims including those under the Age Discrimination in Employment Act (ADEA)." (Doc. 34 at 1.)

132. The Plaintiffs contest that the ADEA release of claims in the Release Agreement was or is valid. Accordingly, there is an actual controversy between the Plaintiffs who are pursuing this count and General Mills over whether the ADEA waiver of claims in the Release Agreement signed by the employees is valid. This controversy presents an actual threat of imminent harm to those Plaintiffs who signed the Release Agreement.

133. Such a dispute must be resolved in Court, as Chief Judge Tunheim concluded in *McLeod*, and as Congress provided in the ADEA/OWBPA.

134. The Release Agreement signed by the Plaintiffs who assert this count, and by other similarly situated persons who may hereafter opt in to this action, was not "knowing and voluntary" for one or more reasons, including because:

(i) The Release Agreement was not written in a manner calculated to be understood by the employee or the average individual eligible to participate, 29 U.S.C. § 626(f)(i)(A), and was misleading and false, in its statement that the "exclusive" method by which an employee who signed the document could challenge the validity of its purported waiver of claims under the ADEA was through binding arbitration on a solo basis under a specified set of arbitration rules selected by General Mills;

(ii) In seeking to secure employee signatures on its Release Agreement, General Mills failed to inform the employees in writing of "any class, unit, or group of individuals covered by [the Project Catalyst employee termination] program." 29 U.S.C. § 626(f)(1)(H)(i);

(iii) General Mills did not provide the employees who signed the Release Agreement with accurate and complete information about the job titles and ages of all individuals eligible or selected for the Project Catalyst employee termination program, and the ages of all individuals in the same job classifications or organizational units who were not eligible or selected for the program;

(iv) General Mills did not provide the employees who it asked to sign the Release Agreement with an accurate and complete disclosure of the job levels of the persons who were eligible or selected for the Project Catalyst employee termination program, or the job levels of all individuals in the same job classifications or organizational units who were not eligible or selected for the program;

(v) General Mills' disclosures provided to affected employees failed to provide cumulative information about ongoing employee terminations at General Mills that were part of or were related to Project Catalyst; and

(vi) General Mills' Release Agreement form sought to impose upon employees who signed it limitations on their right to challenge that agreement, including the limitation that an employee could do so "only on an individual basis," and the further limitation that any such claim by an employee could be resolved only in "binding arbitration" conducted pursuant to a set of arbitration rules selected by General Mills.

135. Accordingly, the purported waivers of ADEA claims in the Release Agreements signed by the Plaintiffs who assert this count, and by other similarly situated persons who may hereafter opt in to this action, were and are invalid and ineffective as a matter of law.

136. If there is any dispute of fact related to whether General Mills can meet its affirmative burden to prove that the Release Agreements were "knowing and voluntary," Plaintiffs demand a jury trial on such issues. The ADEA provides for a right to a jury trial "on any issue of fact in any" ADEA action. 29 U.S.C. § 626(c)(2).

## COUNT TWO: ADEA COLLECTIVE ACTION – DISPARATE TREATMENT AGE DISCRIMINATION

137. Plaintiffs incorporate herein by reference the above paragraphs.

138. This is a collective action under 29 U.S.C. §§ 626(b) & (c) and 29 U.S.C. § 216(b) by the above-named Plaintiffs and other similarly situated persons who may

subsequently opt in to this action. As noted above, the Plaintiffs who previously signed the Release Agreement are pursuing their ADEA claims other than Count One in individual arbitration proceedings. Plaintiff Kloeckner, who did not sign the Release Agreement and who thus did not agree to arbitrate any ADEA claims against General Mills, seeks relief from General Mills in connection with this count. Kloeckner also asserts this count as a collective action on behalf of other persons similarly situated who did not sign the Release Agreement and who may hereafter opt in to this action.

139. As set forth more fully above, General Mills engaged in an unlawful pattern or practice of age discrimination in connection with its Project Catalyst employee termination program. The Plaintiffs identified above and other similarly situated employees who were age 40 or over and who General Mills terminated from employment or demoted in connection with its Project Catalyst were victims of this pattern or practice of age discrimination.

140. The aforesaid pattern or practice of age discrimination by General Mills was willful.

141. By engaging in said unlawful and willful pattern or practice of age discrimination in connection with its Project Catalyst employee terminations, General Mills prevented the named Plaintiffs and other similarly situated persons from obtaining compensation and benefits that they otherwise would have earned and received.

142. As a direct and proximate result of the aforesaid unlawful and willful pattern or practice of age discrimination by General Mills, Plaintiff Kloeckner and other persons similarly situated who did not sign the Release Agreement and who may

hereafter opt in to this action have suffered damages in an amount to be determined, including, but not limited to, lost salary, bonuses, and other compensation and lost pension, retirement, insurance and/or other employee benefits.

**COUNT THREE:**
**INDIVIDUAL CLAIMS – ADEA DISPARATE TREATMENT**

143. Plaintiffs incorporate herein by reference the preceding paragraphs.

144. As noted above, Plaintiffs who previously signed the Release Agreement are pursuing their ADEA claims other than Count One in individual arbitration proceedings. Plaintiff Kloeckner, who did not sign the Release Agreement and who thus did not agree to arbitrate any ADEA claims against General Mills, seeks relief from General Mills in connection with this count. Kloeckner also asserts this count as a collective action on behalf of other persons similarly situated who did not sign the Release Agreement and who may hereafter opt in to this action.

145. General Mills discriminated against each of the above-named Plaintiffs, and against each additional similarly situated person who hereafter opts in to this action, because of her/his age in willful violation of the ADEA by engaging in the aforesaid pattern or practice of age discrimination and by terminating her/his employment or by demoting him/her in connection with Project Catalyst.

146. As a direct and proximate result of General Mills' willful age discrimination, Plaintiff Kloeckner and other persons similarly situated who did not sign the Release Agreement and who may hereafter opt in to this action have suffered damages in an amount to be determined at trial, including, but not limited to, lost salary,

bonuses, and other forms of compensation, lost pension and retirement benefits, insurance benefits and/or other employee benefits.

**COUNT FOUR:**
**ADEA COLLECTIVE ACTION – DISPARATE IMPACT**

147. Plaintiffs incorporate herein by reference the preceding paragraphs.

148. This is a collective action under 29 U.S.C. §§ 626(b) & (c) and 29 U.S.C. § 216(b) by the above-named Plaintiffs and other similarly situated persons who may subsequently opt in to this action. As noted above, the Plaintiffs who previously signed the Release Agreement are pursuing their ADEA claims other than Count One in individual arbitration proceedings. Plaintiff Kloeckner, who did not sign the Release Agreement and who thus did not agree to arbitrate any ADEA claims against General Mills, seeks relief from General Mills in connection with this count. Kloeckner also asserts this count as a collective action on behalf of other persons similarly situated who did not sign the Release Agreement and who may hereafter opt in to this action.

149. The ADEA provides that it is unlawful for an employer to:

> "limit, segregate or classify his employees in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's age." 29 U.S.C. § 623(a)(1).

150. Based on this provision, the U.S. Supreme Court has held that disparate impact claims may be asserted under the ADEA. *Smith v. City of Jackson*, 544 U.S. 228, 232 (2005). A disparate impact violation is established by evidence of a test, requirement or practice of the employer "that has an adverse impact on older workers." *Id.* at 241.

151. As set forth more fully above, General Mills has utilized employment practices, including its 9-block practice for ranking or rating employees based on subjective criteria such as "potential," and the related practice(s) under which General Mills gave preference in making staffing decisions to employees who it assessed as having high "potential," which have disparately impacted the above-named Plaintiffs and other similarly situated persons age 40 or over. General Mills has admitted in the Project Catalyst termination disclosures it provided to the above-named Plaintiffs that employee "potential" was a factor used by General Mills to make the Project Catalyst employee termination and demotion decisions.

152. The aforesaid age discrimination by General Mills was willful.

153. As a direct and proximate result of the aforesaid age discrimination by General Mills, Plaintiff Kloeckner and other persons similarly situated who did not sign the Release Agreement and who may hereafter opt in to this action have suffered damages in an amount to be determined at trial, including, but not limited to, lost salary, bonuses, and other forms of compensation, lost pension, retirement benefits, insurance benefits and/or other employee benefits, and damages for mental anguish and suffering.

## **COUNT FIVE:**
## **INDIVIDUAL CLAIMS – ADEA DISPARATE IMPACT**

154. Plaintiffs incorporate herein by reference the preceding paragraphs.

155. As noted above, Plaintiffs who previously signed the Release Agreement are pursuing their ADEA claims other than Count One in individual arbitration proceedings. Plaintiff Kloeckner, who did not sign the Release Agreement and who thus

did not agree to arbitrate any ADEA claims against General Mills, seeks relief from General Mills in connection with this count. Kloeckner also asserts this count as a collective action on behalf of other persons similarly situated who did not sign the Release Agreement and who may hereafter opt in to this action.

156. The ADEA provides that it is unlawful for an employer to:

> "limit, segregate or classify his employees in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's age." 29 U.S.C. § 623(a)(1).

157. Based on this provision, the U.S. Supreme Court has held that disparate impact claims may be asserted under the ADEA. *Smith v. City of Jackson*, 544 U.S. 228, 232 (2005). A disparate impact violation is established by evidence of a test, requirement or practice of the employer "that has an adverse impact on older workers." *Id.* at 241.

158. As set forth more fully above, General Mills has utilized employment practices, including its 9-block practice for ranking or rating employees based on subjective criteria such as "potential," and the related practice under which General Mills gave preference in making staffing decisions to employees who it assessed as having high "potential," which have disparately impacted the above-named Plaintiffs and other similarly situated persons. General Mills has acknowledged that employee "potential" was a factor it used to make the Project Catalyst employee termination decisions.

159. The aforesaid age discrimination by General Mills was willful.

160. As a direct and proximate result of General Mills' willful age discrimination, Plaintiff Kloeckner and other persons similarly situated who did not sign

the Release Agreement and who may hereafter opt in to this action have suffered damages in an amount to be determined at trial, including, but not limited to, lost salary, bonuses, and other forms of compensation, lost pension and retirement benefits, insurance benefits and other employee benefits.

## COUNT SIX: MHRA: DISPARATE TREATMENT AGE DISCRIMINATION – PLAINTIFF KLOECKNER

161. Plaintiff Kloeckner incorporates herein by reference the preceding paragraphs as if fully stated herein.

162. Under the MHRA it is unlawful to discriminate against an employee by terminating or demoting that employee because of age.

163. The conduct of General Mills as described herein constituted age discrimination against Plaintiff Kloeckner in violation of the MHRA, and also represented and reflects a deliberate disregard for the rights of employees such as Kloeckner.

164. As a direct result of General Mills' unlawful conduct, Plaintiff Kloeckner has suffered damages, including lost past and future income and employee benefits, mental anguish, humiliation, and embarrassment.

## COUNT SEVEN: MHRA: DISPARATE IMPACT AGE DISCRIMINATION – PLAINTIFF KLOECKNER

165. Plaintiff Kloeckner incorporates herein by reference the preceding paragraphs as if fully stated herein.

166. Under the MHRA, it is unlawful for an employer to use or apply a facially-neutral employment practice that, in its application, discriminates against members of a protected class under the law.

167. As set forth more fully above, General Mills has utilized employment practices, including its 9-block practice for ranking or rating employees based on subjective criteria such as "potential," and the related practice under which General Mills gave preference in making staffing decisions to employees who it assessed as having higher "potential," which have harmed Plaintiff Kloeckner and others similarly situated.

168. General Mills has acknowledged in a disclosure it provided to Plaintiff Kloeckner that employee "potential" was a factor it used to make the Project Catalyst employee termination selection decisions.

169. The conduct of General Mills as described herein constituted age discrimination against Kloeckner in violation of the MHRA, and also represented and reflects a deliberate disregard for the rights of employees such as Kloeckner.

170. As a direct result of General Mills' unlawful conduct, Plaintiff Kloeckner has suffered damages, including lost past and future income and employee benefits, mental anguish, humiliation, and embarrassment.

## COUNT EIGHT:
## MINN. STAT. § 181.81: DISMISSAL FOR AGE – PLAINTIFF KLOECKNER

171. Plaintiff Kloeckner incorporates herein by reference the preceding paragraphs as if fully stated herein.

172. Minn. Stat. § 181.81 provides that it is unlawful for any private sector employer "to discharge, dismiss, reduce in grade or position or demote any individual on the grounds that the individual has reached an age of less than 70 …."

173. The conduct of General Mills with respect to Kloeckner as described herein constitutes a violation of Minn. Stat. § 181.81.

174. As a direct result of General Mills' unlawful conduct, Plaintiff Kloeckner has suffered damages, including lost past and future income and employee benefits, mental anguish, humiliation, and embarrassment.

## COUNT NINE: DECLARATORY JUDGMENT – NLRA

175. Plaintiffs incorporate herein by reference the preceding paragraphs.

176. Section 7 of the National Labor Relations Act provides that employees shall have the right to self-organization; to form, join, or assist labor organizations; to bargain collectively through representatives of their own choosing; and to engage in "other concerted activities for the purpose of collective bargaining or other mutual aid or protection." 29 U.S.C. § 157. Section 8 enforces these rights by making it "an unfair labor practice for an employer . . . to interfere with, restrain, or coerce employees in the exercise of the rights guaranteed by [§ 7]." 29 U.S.C. § 158. Section 7's "other concerted activities" have long been held to include "resort to administrative and judicial forums." *Eastex, Inc. v. NLRB*, 437 U.S. 556, 566 (1978) (collecting cases).

177. While the Eighth Circuit has upheld the enforcement of collective action/class action waivers in connection with agreements to arbitrate claims, at least two

other judicial circuits have recently held that such waivers, as applied to employee rights and claims under federal statutes, are impermissible and unenforceable because they violate the rights of employees under Section 7 of the NLRA to engage in "concerted activities for the purpose of … mutual aid or protection." *See Lewis v. Epic Systems Corp*., 823 F.3d 1147 (7th Cir. 2016) (affirming district court's denial of employer's motion to compel arbitration; "We conclude that this [arbitration agreement requiring employees to bring wage-and-hour claims against the company only through individual arbitration] violates the National Labor Relations Act(NLRA) and is also unenforceable under the Federal Arbitration Act(FAA).") (citations omitted); *Morris v. Ernst & Young LLP*, 834 F.3d 975 (9th Cir. 2016) ("We consider whether an employer violates the [NLRA] by requiring employees to sign an agreement precluding them from bringing, in any forum, a concerted legal claim regarding wages, hours and terms and conditions of employment. We conclude that it does, and vacate the order of the district court compelling individual arbitration.").

178. On January 13, 2017, the Supreme Court collectively granted certiorari in these two cases and a third that presents a similar issue. On February 9, 2017, the Court announced the cases would not be argued in the current term (ending June 30, 2017).

179. If the Supreme Court upholds the principle that collective-action waiver provisions as applied to federal statutory employment-related claims violate the rights of employees under Section 7 of the NLRA, then the collective-action waiver provision within the Release Agreements signed by the named Plaintiffs (other than Kloeckner) should be held invalid and ineffective.

**WHEREFORE,** the above-named Plaintiffs request that the Court enter judgment in their favor and in favor of each other similarly situated person who may hereafter opt in to this action as a party Plaintiff, and against General Mills, as follows:

1. Declaring that the purported waivers of ADEA claims in the General Mills' Release Agreements signed by some but not all of the above-named Plaintiffs, and by other persons similarly situated, were not "knowing and voluntary" under the ADEA/OWBPA, and also were not knowing and voluntary under the totality of the circumstances, and thus were and are ineffective as a matter of law to waive or impair any ADEA claim;

2. Declaring that the General Mills Release Agreement was false and misleading, misstated applicable law and improperly imposed limitations and penalties by informing employees that the exclusive forum in which they could challenge the validity of the purported waiver of ADEA claims contained in that Agreement was in an arbitration proceeding on a solo basis;

3. Confirming any arbitration award issued in favor of any above-named Plaintiff and entering a judgment in favor of that person and against General Mills;

4. Awarding Plaintiff Kloeckner and any opt-in Plaintiffs who did not sign the Release Agreement back pay and benefits, together with interest thereon;

5. Reinstating Plaintiff Kloeckner, and any opt-in Plaintiffs who did not sign the Release Agreement, to her/their former position or, in lieu of reinstatement, awarding

each such Plaintiff front pay and benefits for the period remaining until that person's expected retirement age;

6. Awarding Plaintiff Kloeckner and any opt-in Plaintiffs who did not sign the Release Agreement liquidated damages pursuant to the ADEA in an amount equal to that person's back pay and benefits award, together with interest thereon;

7. Awarding Plaintiff Kloeckner all damages or other relief recoverable under the MHRA and Minn. Stat. § 181.81, including treble damages, damages for mental anguish, and punitive damages in an amount up to $25,000, and imposing a civil penalty against General Mills under the MHRA;

8. Declaring that the class and collective action waiver provision in the Release Agreement signed by any Plaintiff or other employee is unenforceable and contrary to law as reflected in the National Labor Relations Act;

9. Awarding Plaintiffs' attorneys' fees and costs pursuant to 29 U.S.C. §§ 216(b) and 626(b), the MHRA, Minn. Stat. Ch. 181, and/or other applicable law;

10. Awarding Plaintiffs and any opt-in Plaintiffs prejudgment interest and their costs and disbursements herein; and

11. Awarding Plaintiffs and opt-in Plaintiffs such other and further relief as the Court deems appropriate.

**SNYDER & BRANDT, P.A.**

Dated: June 1, 2017

***s/ Craig A. Brandt***

Stephen J. Snyder (#103019)
Craig A. Brandt (#214036)
Brent C. Snyder (#034879X)
120 South Sixth Street, Suite 2550
Minneapolis, MN 55402
(612) 787-3100 (telephone)
(612) 333-9116 (facsimile)
Stephen.snyder@snyderattorneys.com
Craig.brandt@snyderattorneys.com
Brent.snyder@snyderattorneys.com

**ATTORNEYS FOR PLAINTIFFS**