UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Case No. 0:16-cv-00954-MJD-KMM

William Shields, et al.,
*for and in behalf of themselves and other persons similarly situated*,

                        Plaintiffs,

v.

General Mills Inc.,

                        Defendant.

**REPORT AND RECOMMENDATION**

Brent C. Snyder, Craig A. Brandt, Snyder & Brandt, P.A., 120 S. Sixth Street, Ste 2250, Minneapolis, MN, 55402; Lucas J. Kaster, Michelle L. Kornblit, Stephen J. Snyder, Steven Andrew Smith, Nichols Kaster, PLLP, 80 S. 8th Street, Ste 4600, Minneapolis, MN, 55402; counsel for plaintiffs

Aaron D. Van Oort, Jeffrey P. Justman, Peter Magnuson, Faegre Baker Daniels LLP, 90 S. 7th Street, Ste 2200, Minneaplis, MN, 55402; Kathryn Mrkonich Wilson, Marko J. Mrkonich, Susan K. Fitzke, Littler Mendelson, PC, 80 S. 8th Street, Ste 1300, Minneapolis, MN, 55402; Keith C. Hult, Littler Mendelson, PC, 321 North Clark Street, Ste 1000, Chicago, IL, 60654; counsel for defendant

      Now before the Court is Defendant General Mills, Inc.'s Motion to Disqualify Counsel, ECF No. 70. For the reasons set forth below, the Court recommends that the motion be denied.

## BACKGROUND

      The defendant seeks to disqualify counsel due to a claimed "unresolvable conflict" created by the plaintiffs' counsel's representation of two plaintiffs in separate but related lawsuits. Def.'s Mem. at 7, ECF No. 72.

### *McLeod* Litigation

      In 2012, General Mills restructured its workforce in a project referred to as Project Refuel. Mrkonich Decl., ¶ 8, Ex. 2 ("Maxe Arb.") at 1, ECF No. 73. This

resulted in the termination of many employees, including Peggy Maxe. *Id.* Ms. Maxe and her similarly situated colleagues signed arbitration agreements as part of their termination. *See id.* at 2-3. Believing she was fired due to age discrimination, Ms. Maxe then filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"). *See id.* at 13.

Plaintiff James Heflin worked at General Mills as a Trade and Business Development Director during Project Refuel. NK Mem. at 2, ECF No. 77. According to in-house counsel for General Mills, James Heflin "was both in Ms. Maxe's supervisory chain and also a direct participant in the decision to terminate Ms. Maxe's employment." Huiras Decl., ¶ 5, ECF No. 74. In-house counsel asserts that "Mr. Heflin was instrumental in assisting [her] investigation into Ms. Maxe's EEOC Charge, and in preparing [General Mills's] response to the same." *Id.*, ¶ 6. In contrast to in-house counsel's statements, Mr. Heflin has "almost no recollection" of providing any such assistance and states, "It seems unlikely to me that I discussed strategies with [in-house counsel] at all but I do not have sufficient recollection of my contacts with her to say one way or the other whether we discussed strategies." Heflin Decl., ¶¶ 4b, 4g, ECF No. 81.

Ms. Maxe was among the *McLeod* plaintiffs, represented by Snyder & Brandt, who filed a collective action in 2015 alleging age discrimination by General Mills. *See* Def.'s Mem. at 5; NK Mem. at 2; SB Mem. at 2, ECF No. 79; *see generally McLeod v. General Mills, Inc.*, 15-cv-00494 (JRT/HB). General Mills moved to stay or dismiss that action pending individual arbitration, the district court judge denied the request, and General Mills appealed to the Eighth Circuit Court of Appeals. *See* Def.'s Mem. at 5; NK Mem. at 6. On April 14, 2017, the Eighth Circuit remanded with instructions to grant the motion to compel individual arbitration. *See* Def.'s Mem. at 5; NK Mem. at 6. Shortly after the remand, Nichols Kaster joined Snyder & Brandt in representation of all of the plaintiffs. *See* Def.'s Mem. at 6; NK Mem. at 7.

### *Shields* **Litigation**

In 2014, General Mills engaged in further restructuring through Project Catalyst. Mrkonich Decl., ¶ 6, Ex. 1 ("Heflin Arb") at 6. A group of employees terminated during this second wave of firings, represented by Snyder & Brandt, filed the instant suit in 2016, again alleging age discrimination by General Mills. *See* Compl., ECF No. 1. The matter was stayed pending a decision from the Eighth Circuit in *McLeod*. Ord., ECF No 12. During the stay, on August 30, 2016, Mr. Heflin filed a consent form indicating his intent to join the class. Notice of Consent at 3, ECF No. 21. The stay was lifted on May 5, 2017, after the *McLeod* decision. Nichols Kaster likewise joined Snyder & Brandt in representation of the

2

second-wave plaintiffs on July 25, 2017. Ord., ECF No. 30; Notices of Appearances, ECF Nos. 58-60.

**Individual Arbitration**

Mr. Heflin filed an arbitration demand on July 11, 2017. Heflin Arb. The signature block included both Snyder & Brandt and Nichols Kaster, but Nichols Kaster withdrew on July 25, 2017, after General Mills raised its concerns of conflict. *Id.* at 25-26; Def.'s Mem. at 7; NK Mem. at 8; SB Mem. at 16.

Ms. Maxe filed an arbitration demand on August 29, 2017. Maxe Arb. The signature block included only Nichols Kaster. *Id.* at 27. Moving forward, Snyder & Brandt will handle Mr. Heflin's arbitration with no assistance from Nichols Kaster, and Nichols Kaster will handle Ms. Maxe's arbitration with no input from Snyder & Brandt. NK Mem. at 8; SB Mem. at 16.

**Instant Motion**

On July 24, 2017, counsel for General Mills informed Snyder & Brandt and Nichols Kaster via letter of the potential conflict and its intent to seek disqualification should the conflict remain unaddressed. Mrkonich Decl., ¶ 9, Ex. 3. Snyder & Brandt hired an ethics attorney to evaluate the circumstances by examining their documents and interviewing Mr. Heflin. *See id.*, ¶ 12, Ex. 6; NK Mem. at 7-8; SB Mem. at 4. The attorney concluded Snyder & Brandt's representation of Mr. Heflin created no conflict and sent a letter so indicating to counsel for General Mills. Mrkonich Decl., ¶ 12, Ex. 6. Despite this conclusion, Snyder & Brandt and Nichols Kaster established an "ethical wall" to prevent any appearance of impropriety moving forward and divided the representation as described above. NK Mem. at 8; SB Mem. at 16.

Counsel for General Mills did not consider this sufficient to address the potential conflict and filed the instant motion. Mot. On October 3, 2017, this Court conducted a hearing on the motion. Min. Entry, ECF No. 82. The Court heard argument from counsel for General Mills, Snyder & Brandt, and Nichols Kaster. *Id.*

## LEGAL STANDARD

The Court has discretion to determine whether counsel should be disqualified. *Gifford v. Target Corp.*, 723 F.Supp. 2d 1110, 1116 (D. Minn. July 13, 2010). "'Disqualification is appropriate where an attorney's conduct threatens to work a continuing taint on the litigation and trial.'" *Id.* (quoting *Arnold v. Cargill, Inc.*, 01-cv-2086 (DWF/AJB), 2004 WL 2203410, at *5 (D. Minn. Sept. 24, 2004)). In making such a determination, a court weighs "the interests and motivations of the attorneys, the clients, and the public." *Id.* The Court must ensure the integrity of

proceedings while recognizing the importance of a party's right to select counsel. *Id.* at 1117. Given these lofty concerns, motions for disqualification of counsel are closely considered, but legitimate doubts are resolved in favor of disqualification. *Id.* Although there are plenty of decisions exploring issues of attorney disqualification, there is no widely-accepted test to guide a court's analysis. But most courts that have grappled with the issue have considered similar factors as relevant to the question of disqualification.

The first consideration is the degree of exposure of the client, attorney, or witness at issue to privileged information. *See Gifford*, 723 F.Supp. 2d at 1119 (considering the exposure of a high-level employee to privileged information); *MMR/Wallace Power & Indust., Inc. v. Thames Assocs.*, 764 F.Supp. 712, 724 (D. Conn. 1991) (considering whether an individual possessed information pertaining to trial strategy). This includes the person's access to knowledge and strategy as well as privileged or confidential documents. *Sukh v. Seagate Tech., LLC*, 10-cv-404 (JRT/JJK), 2010 WL 5018189, at *6 (D. Minn. Dec. 2, 2010) (considering documents a former employee copied and took with him upon his termination); *Arnold*, 2004 WL 2203410, at *7 (considering the high placement of the contacted employee). The Court refers to this factor as access.

A second factor to evaluate is whether any steps were taken to prevent disclosure of confidential information or to mitigate the impact of such disclosure. *See Gifford*, 723 F.Supp. 2d at 1119 (considering counsel's failure to cease review of documents upon discovering privileged content); *Sukh*, 2010 WL 5018189, at *7 (noting counsel's treatment of documents as confidential). A finding that no such steps were taken weighs in favor of disqualification. *See Arnold*, 2004 WL 2203410, at *6-7 (criticizing the lack of an explanation of privilege and counsel's failure to immediately return obviously privileged documents). The Court calls this factor preventative measures.

A third consideration is whether any privileged or confidential information has actually been disclosed, which the Court terms disclosure. *See Gifford*, 723 F.Supp. 2d. at 1119 (discussing counsel's review of privileged documents); *MMR*, 764 F.Supp. at 724 (considering confidential documents that were actually produced); *Sukh*, 2010 WL 5018189, at *6-7 (noting that the employee gave copied documents to counsel); *Arnold*, 2004 WL 2203410, at *7-10 (considering produced documents).

The final element is the conduct of counsel with respect to the conflict and the potential or actual disclosure of confidential information. *See Gifford*, 723 F.Supp. 2d at 1119 (criticizing attorneys who actively solicited confidential information); *Sukh*, 2010 WL 5018189, at *7 (finding no improper conduct where counsel's obligation was to obtain sufficient facts to provide legal advice). Where an attorney is suspected of

4

acting unethically, in bad faith, or in an intentional quest for privileged information, disqualification is appropriate. *See Arnold*, 2004 WL 2203410, at *6 (disapproving of dishonest representations for the purpose of securing a client who could provide confidential documents). The Court will call this factor improper intent.

## ANALYSIS

Considering each of these four factors in the present case, the Court concludes that General Mills has not demonstrated that Nichols Kaster cannot represent Ms. Maxe, nor that Snyder & Brandt cannot represent Mr. Heflin.[1] Although the first factor, "access," somewhat supports General Mills's argument, the other three factors weigh against the conclusion that removal of counsel is required.

**Access**

The parties contest the extent of Mr. Heflin's access to privileged information. *Compare* Huiras Decl. *with* Heflin Decl. Ultimately, the Court concludes that there is evidence to suggest that Mr. Heflin had access to some privileged communications regarding Ms. Maxe, a reality that weighs in favor of a finding of conflict.

General Mills contends that Mr. Heflin was instrumental to the development of its defenses to Ms. Maxe's EEOC charge and suggests that he was privy to a global litigation strategy regarding age discrimination claims. Def.'s Mem. at 12; *see also* Huiras Decl. They argue that Snyder & Brandt and Nichols Kaster "should not be permitted to exploit the privileged and confidential knowledge of General Mills's highly-placed former employee." Def.'s Mem. at 13. In contrast, Mr. Heflin disagrees with General Mills's assertions as to his instrumentality and submits that he has almost no recollection of any of the conversations to which General Mills and its in-house counsel ascribe vital importance. Heflin Decl., ¶ 4.

The Court concludes that the evidence supports General Mills's assessment that Mr. Heflin was involved in privileged conversations about Ms. Maxe, but does not embrace the extent of access claimed. Indeed, the cases relied upon by

---

[1] General Mills briefly raises the Minnesota Rules of Professional Responsibility in its memorandum. Def.'s Mem. at 11, 17-18, 18 n.5. Nichols Kaster argues that the rules are not appropriate tools for relief and frames its argument around the inapplicability of those rules while focusing primarily on caselaw in the argument itself. NK Mem. at 11, 13-15. Snyder & Brandt relies solely on caselaw regarding the allegations of impropriety. SB Mem. at 6-17. General Mills does not ultimately rely on the rules for relief and the relevant caselaw does not consistently rely on the rules in analyzing motions for disqualification. For these reasons, and because the rules are not integral to the forthcoming analysis, the Court does not consider the rules specifically.

General Mills in support of its motion involve far greater access than that reasonably attributable to Mr. Heflin. General Mills most heavily relies on two cases relevant to this factor, *Arnold* and *Gifford*. Def.'s Mem. at 12-16. *Arnold* involved a former human-resources manager who had "extensive" exposure to confidential and privileged information through "regular contact" with in-house and outside counsel. 2004 WL 2203410, at *1. *Gifford* involved representation of a high-ranking former human-resources executive whose access was contested: she maintained that she was familiar with legal issues in employment but never had to seek legal advice, while outside counsel indicated they had had contact on nearly two hundred occasions. 723 F.Supp. 2d at 1113. In both cases, the former employees had access to information and documents relevant to the underlying litigation. *Id.* at 1114; *Arnold*, 2004 WL 2203410, at *2.

In the present case, the record suggests that Mr. Heflin had access to some privileged communications but that his access was more circumscribed than that in either *Gifford* or *Arnold*. Though Mr. Heflin's former position involved interaction with the legal team around Ms. Maxe's EEOC complaint, General Mills has not provided any documentation in support of in-house counsel's averments to suggest that Mr. Heflin frequently communicated substantively about legal issues. *See* Huiras Decl. And certainly General Mills does not argue that Mr. Heflin has current access to any documents relevant to this case or the *McLeod* litigation. But because Snyder & Brandt and Nichols Kaster have not provided any support for the notion that Mr. Heflin's lack of memory suffices to preclude the risk of disclosure, the factor of access weighs somewhat in favor of disqualification and necessitates consideration of the other factors.[2]  *See Gifford*, 723 F.Supp. 2d at 1117.

**Preventative Measures**

The measures taken by Snyder & Brandt and Nichols Kaster to ensure that Mr. Heflin would not disclose privileged information weigh significantly against disqualification of counsel. General Mills contends that the steps taken do not suffice to safeguard privilege, but the Court disagrees.

---

[2] The Court additionally notes that if General Mills's argument that Mr. Heflin has knowledge about its global strategy in the age discrimination arena were taken to its logical endpoint, that alleged knowledge would preclude him from ever pursuing his own claim of age discrimination. This cannot be the case. Any concerns raised by Mr. Heflin's supposed knowledge about overall litigation strategy are also substantially lessened by the reality that these cases are now the subject of individual arbitration rather than any active class litigation.

Both Snyder & Brandt and Nichols Kaster took numerous steps to prevent any disclosure of privileged information. Snyder & Brandt told Mr. Heflin not to "divulge any communications" that he may have had with company lawyers prior to his termination. SB Mem. at 14. Nichols Kaster never communicated with or received information from Mr. Heflin, nor did it review any documentation provided to Snyder & Brandt by Mr. Heflin. NK Mem. at 18. And as soon as General Mills alleged a conflict, Snyder & Brandt removed Nichols Kaster's access to those documents. *Id.* Nichols Kaster withdrew from representation as to Mr. Heflin's arbitration, and Snyder & Brandt did the same as to Ms. Maxe's arbitration. NK Mem. at 8; Smith Decl., Ex. A, ECF No. 80; SB Mem. at 16. Finally, upon receipt of General Mills's letter, Snyder & Brandt called upon outside counsel to evaluate the potential for a conflict of interest and outside counsel did not find reason for concern. SB Mem. at 14-15; Mrkonich Decl., ¶ 12, Ex. 6.

General Mills argues that counsel cannot ignore the risk of disclosure and then make "self-serving protestations" to "assuage the fears" that confidential information had been disclosed. Def.'s Mem. at 14 (citing *MMR*, 764 F.Supp. at 726-27; *Arnold*, 2004 WL 2203410, at *8). At the motion hearing, General Mills argued that these efforts were insufficient and occurred too late to be effective. Mot. Hrg. Trans. at 7-8, 14-15, 20-23, ECF No. 86. General Mills points the Court to several cases in support of its claim that the measures taken in this case were not enough. However, in each of those cases, the measures taken to prevent disclosure were not only less than those taken here, but in some instances were demonstrably inadequate to prevent known disclosure.

In *EZ Paintr Corp. v. Padco, Inc.,* two lawyers from the firm representing EZ Paintr left to begin new positions at the firm representing Padco during ongoing litigation between the two companies. 746 F.2d 1459, 1460 (Fed. Cir. 1984). Those lawyers had been part of a small, seven-lawyer firm in which current cases were openly discussed, and one lawyer explicitly discussed the merits of the case with lead counsel before joining the opposing firm. *Id.* at 1461-62. The firm representing Padco established an ethical wall to prevent disclosures, but not until more than three months after the two lawyers joined the firm. *Id.* at 1462.

In *Gifford*, the witness was issued a warning not to disclose privileged information and received an explanation as to the concept of privilege, but later produced clearly privileged documents. 723 F.Supp. 2d. at 1114. Rather than returning the documents immediately without review, counsel performed its own review and waited for more than a month to return the documents. *Id.* at 1119. And in *Arnold*, plaintiffs' counsel specifically instructed the witness to produce a number of documents belonging to the defendant, including some marked "Privileged and Confidential." 2004 WL 2203410, at *2-3. Though plaintiffs' counsel claimed it gave

7

an instruction not to disclose any privileged information, the witness denied ever receiving such an instruction. *Id.*, at *3. Plaintiffs' counsel did not return the privileged documents for approximately eighteen months. *Id.*, at *4. *See also Camden v. State of Maryland*, 910 F.Supp. 1115, 1117, 1122-23 (D. Md. 1996) (involving a primary contact person for one party to litigation becoming a witness for the opposing party after his termination with no preventative warning and with known disclosure of confidential documents); *MMR*, 764 F.Supp. at 714-16, 725-27 (discussing a witness who acted as a trial consultant and paralegal for the plaintiffs became a paid trial consultant for the defendants during the litigation, and the insufficiency of a preventative warning where the witness had deep knowledge of litigation strategy).

In all of the cases upon which General Mills relies, the access to privileged communication was greater and the measures taken to prevent its disclosure were much less meaningful than those here. Mr. Heflin never communicated with Nichols Kaster before the ethical wall was established. He was instructed not to "divulge any communications" that he may have had with company lawyers prior to his termination. And General Mills has not alleged the disclosure of any privileged documents. Given the uncertainty of his access, the substantial preventative measures taken by Snyder & Brandt and Nichols Kaster were far more likely to be effective than those in the cases upon which General Mills relies.[3] Indeed, none of the cases relied upon by General Mills involved separation of two possibly conflicted cases into two entirely separate firms. This factor weighs strongly against a finding of disqualification.

**Disclosure**

General Mills argues that, even if it could review all information that Mr. Heflin provided to Snyder & Brandt and Nichols Kaster, "it would be impossible to remove that knowledge from the minds of his attorneys." Def.'s Mem. at 16. And General Mills asserts that it "is sufficient to show that the potential for misuse is present and that the lawyers failed to take prompt and effective measures . . . to prevent the misuse." *Id.* at 19 (citing *EZ Paintr*, 746 F.2d at 1462). Nichols Kaster is adamant that no disclosure occurred in this case.[4] NK Mem. at 18. It further contends that "'the pivotal question . . . is the likelihood that any information

---

[3] It is also important to note that, because Ms. Maxe and Mr. Heflin must first proceed with individual arbitration, the efforts undertaken by plaintiffs' counsel to avoid disclosure are even more likely to be effective.

[4] Though the assertions of Snyder & Brandt and Nichols Kaster as to the lack of disclosure are arguably self-serving, the same is true of the assertions of General Mills's in-house counsel that Mr. Heflin ever had substantial access.

8

gathered by [counsel] actually intruded upon any legally privileged matters.'" *Id.* at 14 (quoting *Olson v. Snap Prods., Inc.*, 183 F.R.D. 539, 545 (D. Minn. 1988)).

Importantly, General Mills has not put forth any evidence to support its assertion that any disclosure has occurred in this case. Instead, General Mills relies on a "rebuttable presumption" of disclosure. However, it invokes a case which suggested a rebuttable presumption "that confidential disclosures passed to the challenged lawyer" in cases involving lawyers "changing sides." Mot. Hrg. Trans. at 52; *EZ Paintr*, 746 F.2d at 1461. These facts, explored above, and thus this holding, are very different from the present case. And every other decision upon which General Mills relies involved known explicit disclosure of privileged or confidential documents. *Gifford*, 723 F.Supp. 2d. at 1119; *MMR*, 764 F.Supp. at 724; *Sukh*, 2010 WL 5018189, at *6-7; *Arnold*, 2004 WL 2203410, at *7-10. Such disclosure is simply not present here.

Further, even if there were a rebuttable presumption that Mr. Heflin disclosed confidential information to Snyder & Brandt and Nichols Kaster, it has been soundly rebutted. Though General Mills suggests Snyder & Brandt and Nichols Kaster failed to effectively and efficiently prevent the "misuse" of the privileged information to which Mr. Heflin allegedly had access, the preventative efforts undertaken here were uniquely robust. Therefore this factor, too, undermines General Mills's position regarding disqualification.

**Improper Intent**

Finally, the absence of bad faith of any sort on the part of either Nichols Kaster or Snyder & Brandt in this case weighs against General Mills's position.[5] The cases upon which General Mills relies in support of its motion involved considerably more improper intent on the part of the challenged attorneys than even General Mills alleges in this case.

For instance, *Gifford* involved counsel actively eliciting privileged information, and reviewing and failing to promptly return privileged documents. 723 F.Supp. at 1119. Similarly, counsel in *Arnold* cultivated a relationship with a former highly-placed employee despite no realistic potential of representing that employee, encouraged his production of privileged documents, did not return the produced documents for

---

[5] General Mills suggests improper intent on the part of Snyder & Brandt and Nichols Kaster regarding a former employee by the name of Linda Hill. Mrkonich Decl., ¶¶ 14-20; Mot. Hrg. Trans. at 15-20. Because the issue is not raised or addressed in the parties' memoranda and because General Mills conceded at the hearing that the issue is not ripe, the Court will not reach the issue. *See id.*

9

eighteen months, and apparently instructed the employee to destroy the documents before he might receive a subpoena for the same. 2004 WL 2203410, at *7-10. In *MMR*, challenged counsel hired as a trial consultant a former employee who previously acted as a trial consultant and paralegal for the opposing party in that same litigation. 764 F.Supp. at 714-16. And even *EZ Paintr* involved counsel "switching sides" from a firm representing the plaintiff to a firm representing the defendant in the same case. 746 F.2d at 1460.

Here, the conduct alleged on the part of plaintiffs' counsel is both more innocent and more ethical. A former employee sought representation for an age-discrimination claim against his former employer. He then provided his attorney with the information necessary for pursuing his own claim. The attorney he hired was in the midst of representing Ms. Maxe, another former employee of the same company, for a similar claim, although that litigation was long dormant. Plaintiffs' counsel did not seek Mr. Heflin as a client, nor pursue him as a source of information regarding Ms. Maxe. As discussed above, as soon as General Mills raised the question of a conflict, both Snyder & Brandt and Nichols Kaster established an ethical wall in the representation of the two individuals and hired outside ethics counsel to advise them as to the nature of the alleged conflict.

Because there is no credible suggestion that challenged counsel here had any improper intent, much less any as reprehensible as those in the caselaw upon which General Mills relies, the Court is satisfied that the improper-intent factor is not met.

## CONCLUSION

In sum, this motion implicates two important competing considerations. On the one hand, General Mills has a valid interest in moving forward in litigation without risking improper disclosure of its confidential information. On the other, both Mr. Heflin and Ms. Maxe have a significant interest in pursuing litigation with counsel of their choosing. *See Gifford*, 723 F.Supp. 2d at 1117 (noting that courts should balance the integrity of the proceedings, the risk of taint, and "the 'important public right' of a party to select its own counsel" (quoting *Macheca Transp. Co. v. Phila. Indem. Ins. Co.,* 463 F. 3d 827, 833 (8th Cir. 2006)). Here, the Court has carefully balanced those concerns and concludes that disqualification of counsel is not required.

Given that this Court has concluded that the preventative measures employed by Snyder & Brandt and Nichols Kaster were sufficient to resolve the minimal possibility that Mr. Heflin had access to confidential information, that no disclosure occurred, and that counsel for plaintiffs did not have improper intent, the risk of taint to future litigation in this matter is minimal. General Mills has failed to establish that

disqualification is required, and the Court is not persuaded that Snyder & Brandt's continued representation of Mr. Heflin and Nichols Kaster's continued representation of Ms. Maxe would taint future litigation.[6] However, because the ethical wall between Snyder & Brandt and Nichols Kaster regarding the individual representation of Mr. Heflin and Ms. Maxe weighs heavily in this Court's calculus, it should be maintained.

## RECOMMENDATION

Based on the foregoing, the Court makes the following recommendations:

1. General Mills, Inc.'s Motion to Disqualify Counsel (**ECF No. 70**) should be **DENIED**.

2. Snyder & Brandt shall maintain the currently established ethical wall precluding their participation in Ms. Maxe's individual representation.

3. Nichols Kaster shall maintain the currently established ethical wall precluding their participation in Mr. Heflin's individual representation.

Date: December 1, 2017

                                                                                     *s/ Katherine Menendez*
                                                                                     Katherine Menendez
                                                                                     United States Magistrate Judge

## NOTICE

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the Report and Recommendation. A party may respond to those objections within 14 days after being served a copy of the

---

[6] Snyder & Brandt and Nichols Kaster both argue that General Mills has waived the right to seek disqualification of counsel by failing to bring the motion as soon as it became aware of any potential conflict. SB Mem. at 18-19; NK Mem. at 20. Because this Court concludes that, even without delay, General Mills has failed to satisfy the four-factor test to establish the propriety of disqualification, the Court need not consider the impact of the delay on the motion.

objections. LR 72.2(b)(2). All objections and responses must comply with the word or line limits set for in LR 72.2(c).

**Under Advisement Date:** This Report and Recommendation will be considered under advisement 14 days from the date of its filing. If timely objections are filed, this Report and Recommendation will be considered under advisement from the earlier of: (1) 14 days after the objections are filed; or (2) from the date a timely response is filed.