UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| William Shields, et al., *for and in behalf of themselves and other persons similarly situated*,<br><br>　　　　　　　　　　　Plaintiffs,<br><br>v.<br><br>General Mills, Inc.,<br><br>　　　　　　　　　　　Defendant. | Case No. 0:16-cv-00954-MJD-KMM<br><br><br>**REPORT AND RECOMMENDATION** |

Brent C. Snyder, Craig A. Brandt, Snyder & Brandt, P.A., 120 S. Sixth Street, Ste 2250, Minneapolis, MN, 55402; Lucas J. Kaster, Michelle L. Kornblit, Stephen J. Snyder, Steven Andrew Smith, Nichols Kaster, PLLP, 80 S. 8th Street, Ste 4600, Minneapolis, MN, 55402; counsel for plaintiffs

Aaron D. Van Oort, Jeffrey P. Justman, Peter Magnuson, Faegre Baker Daniels LLP, 90 S. 7th Street, Ste 2200, Minneapolis, MN, 55402; Kathryn Mrkonich Wilson, Marko J. Mrkonich, Susan K. Fitzke, Littler Mendelson, PC, 80 S. 8th Street, Ste 1300, Minneapolis, MN, 55402; Keith C. Hult, Littler Mendelson, PC, 321 North Clark Street, Ste 1000, Chicago, IL, 60654; counsel for defendant

　　　　The District Court referred the plaintiffs' Motion for Temporary Restraining Order and Preliminary Injunction ("Mot."), ECF No. 109 to this Court for a Report and Recommendation. The Court held a phone conference on January 25, 2018, in which counsel for both sides participated.[1] The defendant, General Mills, Inc., filed a letter brief at the Court's request following that conference. Resp. in Opp., ECF No. 118. For the reasons set forth below, the Court recommends that the motion be denied.

## I.　　RELEVANT PROCEDURAL AND FACTUAL BACKGROUND

　　　　The issue of the propriety of arbitration in this matter has been the subject of extensive litigation, both in this case and in the closely related *McLeod* litigation. On

---

[1] The telephone conference was only partially recorded, and no transcript has been prepared. However, it involved only oral argument with no testimony.

January 2, 2018, Judge Davis granted General Mills's Motion to Compel Arbitration on an Individual Basis as to almost all of the plaintiffs in this matter, dismissed one count without prejudice, and stayed the remainder of the litigation pending the completion of the arbitration proceedings. Ord., ECF No. 106. Although only recently issued, Judge Davis's Order was likely not a surprise given that the ruling was compelled by the Eighth Circuit's decision requiring arbitration in the virtually indistinguishable *McLeod* case. *See McLeod v. General Mills, Inc.*, 856 F.3d 1160, 1166 (8th Cir. 2017) (finding that the plaintiffs in that case signed agreements requiring individual arbitration of their ADEA claims and that General Mills's motion to compel individual arbitration should have been granted). It is against this backdrop of a clear determination that arbitration should proceed that the Court must now consider the plaintiffs' efforts to halt that ongoing process.

### Arbitrator Linda Close

Beginning last fall, the parties began individual arbitration for plaintiffs from the *McLeod* litigation. *See* Snyder Dec., ¶ 10, ECF No. 112. On December 15, 2017, an arbitrator in one of those cases, Ms. Linda Close, issued a written decision in favor of General Mills which included language that praised its business practices. Resp. in Opp. at 12-27. The plaintiffs, prompted either by this positive language or by the unwanted ruling itself, looked for and discovered a connection, arguably a very tenuous one, between Arbitrator Close and General Mills. Snyder Dec., ¶ 11. Specifically, Arbitrator Close's husband previously worked for a non-profit, for a time held a role that required fundraising and General Mills's charitable arm had donated to that nonprofit. *Id.* Also General Mills's former Chief Marketing Officer, who was noticed as a potential witness, had been a board member for the same nonprofit. *Id.* Finally, the plaintiffs found photographs indicating that Arbitrator Close and her husband attended a gala that the former Chief Marketing Officer had also attended. *Id.*, ¶ 15.

Arbitrator Close has been appointed in at least ten yet-to-be-scheduled other arbitrations relating to age-discrimination claims and General Mills. Mem. in Supp. at 4, ECF No. 111. The scheduled arbitration giving rise to the plaintiffs' emergency motion is that of Michael Murray, one of the named plaintiffs in this case. His arbitration is currently scheduled to begin on January 29, 2018. *Id.*

### AAA Decision Regarding Arbitrator Close's Alleged Bias

Following their investigation, the plaintiffs filed an objection with the American Arbitration Association ("AAA"), arguing that Arbitrator Close was plainly biased in favor of General Mills and should not be allowed to preside over any further planned arbitrations of age-discrimination claims brought by the plaintiffs in this matter

against General Mills.  Snyder Dec., ¶ 22, Ex. E.  The objection prompted the arbitrator to make a supplemental submission to the AAA describing her complete lack of knowledge as to whether General Mills ever donated to her husband's former employer and suggesting that she had no idea who the chief marketing officer was, much less of his connection to the nonprofit at issue.  *Id.*, Ex. F.

The plaintiffs were unsatisfied by this submission and argued that the AAA should disqualify Arbitrator Close from presiding over the planned age-discrimination arbitrations.  *Id.*. Ex. G.  However, the AAA refused to disqualify the arbitrator, finding no violation of the AAA's Administrative Review Council's Review Standards.  *Id.*, Ex. L.  The plaintiffs "reject[ed] that decision by the Council," asserting that it "contradicts the express language of the arbitration provision in these cases" and "has no effect on these proceedings" because the parties never agreed to be subject to the rules upon which the Administrative Review Council relied.  *Id.*, Ex. M.  Rather, the parties agreed only to be governed by the AAA Employment Arbitration Rules and Mediation Procedures.  *Id.*

The plaintiffs therefore requested that the AAA postpone the arbitration proceeding scheduled for January 29 and any other similar arbitration proceedings involving this particular arbitrator until the plaintiffs obtained a court ruling on their motions to disqualify her as an arbitrator.  *Id.*  In response, the AAA noted the rules allowing it to conclusively decide whether an arbitrator should be disqualified and to "assign the administration of an arbitration to its offices."  *Id.*, Ex. N.  The AAA further explained that the Administrative Review Council is one of its administrative offices.  *Id.*  Because the AAA's previous determination to affirm the arbitrator's appointment was conclusive and because the plaintiffs did not offer any new reason as grounds for disqualification, the AAA reaffirmed the arbitrator's appointment.  *Id.*  The AAA then informed the arbitrator that the plaintiffs sought a postponement to "pursue administrative items in Court" and that General Mills opposed the request.  *Id.*  The arbitrator declined to postpone the arbitration proceedings.  *Id.*

### Motion for a Temporary Restraining Order

The plaintiffs now seek a Temporary Restraining Order and Preliminary Injunction preventing the scheduled arbitrations from proceeding until this Court can hear a soon-to-be-filed motion to disqualify the arbitrator.  Mot.  As a practical matter, they seek an order prohibiting Mr. Murray's arbitration from beginning next week.

## II.   THE COURT'S AUTHORITY TO ENJOIN THE ARBITRATION

The most fatal flaw in the plaintiffs' position is that this Court lacks the authority to grant the requested relief.  The plaintiffs present their motion without

establishing that this Court has the power to stay the arbitration under these circumstances. General Mills objects to the assertion that this Court can intervene in the middle of the arbitration process, prior to an award by the arbitrator, due to a claim of bias, and the Court agrees. *See* Resp. in Opp. at 5-8.

Frankly, it appears settled that the Court cannot grant the relief the plaintiffs now seek, at this stage in the litigation. "Appellants cannot obtain judicial review of the arbitrators' decisions about the qualifications of the arbitrators or other matters prior to the making of an award." *Cox v. Piper, Jaffray & Hopwood, Inc.*, 848 F.2d 842, 843-44 (8th Cir. 1988) (citing *Stroh Container Co. v. Delphi Indus., Inc.*, 783 F.2d 743, 748-49 (8th Cir. 1986)). As Judge Montgomery held in *Richert v. Nat'l Arbitration Forum, LLC*, "[a] party wishing to challenge an arbitrator's decision on the ground of his/her qualifications must do so after the arbitrator renders a decision." No. 09-CV-763 (ADM/JJK), 2009 WL 3297565, *5 (D. Minn. Oct. 13, 2009). In *Richert*, the court rejected efforts by the plaintiff to delay arbitration so that she could explore possible bias on the part of the arbitration organization at issue, concluding that such issues were addressed by the arbitration rules and could be brought to the Court for review at a later stage. *Id.*

AAA rules, which apply in the *Shields* and *McLeod* arbitrations, expressly provide conclusive authority to the AAA to make determinations as to the affirmance or disqualification of an arbitrator. Snyder Dec., ¶ 22, Ex. R ("AAA Rules") at 40. Rule 16 specifically states that the AAA has this conclusive authority, and Rule 3 allows the AAA to delegate these determinations to the various committees and offices within its organization. *Id.* at 34, 40. And the Federal Arbitration Act ("FAA") only expressly provides for pre-award court intervention in circumstances where an arbitration agreement itself is challenged or does not provide for an arbitrator, 9 U.S.C. §§ 1-15. Section 16 discusses orders from which appeals can and cannot be taken and refers to certain interlocutory orders, but does not provide authority for courts to hear what is essentially an interlocutory appeal from an arbitrator's or arbitration association's mid-arbitration determinations. *Id.*, § 16.

The plaintiffs rely on a handful of cases to argue that this Court has authority to intervene in what is essentially an interlocutory appeal, but none truly support their position. Plaintiffs first cite *Commonwealth Coatings Corp. v. Cont'l Cas. Co*, which stands for the proposition that courts may consider the partiality of an arbitrator on a challenge to a federal court after an award. 393 U.S. 145, 146, 89 S.Ct. 337, 338 (1968); Mem. in Supp. at 13-14. But here the plaintiffs' case is pre-award, and *Commonwealth* does nothing to establish a court's authority to intervene on this basis mid-arbitration.

4

The plaintiffs' reliance on *Aerojet-General Corp. v. Am. Arbitration Ass'n* is similarly misplaced. 478 F.2d 248 (9th Cir. 1973); Mem. in Supp. at 19. That case arose from a dispute over venue of arbitration and involved a suit against the arbitration association itself. *Id.* at 250. *Aerojet* noted that "permit[ting] what is in effect an appeal of an interlocutory ruling of the arbitrator would frustrate" the purpose of arbitration, which is to be more efficient and cost-effective than court proceedings. 478 F.2d at 251. The court in *Aerojet* suggested that a federal court might be able to immediately review "a ruling setting the place for arbitration" given that such determinations could cause "severe irreparable injury," but ultimately found that the facts of that case did not present such an extreme circumstance to justify court intervention. *Id.*

The plaintiffs additionally cite to *S.J. Groves & Sons Co. v. Am. Arbitration Ass'n*, but it is no more helpful. *See* Mem. in Supp. at 19. *S.J. Groves & Sons Co.* explicitly states that the FAA does not give this Court authority to act in circumstances such as these, and cautions:

> The present action illustrates well the effect of allowing an interlocutory appeal. By coming to district court at this time, the plaintiff . . . has added and if permitted would continue to add needless expense to the resolution of the underlying dispute, as well as significantly delaying the arbitration proceeding.

452 F. Supp. 121, 124 (D. Minn. 1978). *S.J. Groves & Sons Co.* frankly undermines rather than bolsters the plaintiffs' position in this matter.

Finally, the plaintiffs rely on *In re Y &A Grp. Sec. Litig*, which arose from very distinct facts involving entry of a federal court judgment prior to the conclusion of arbitration. 38 F.3d 380, 381 (8th Cir. 1994). While that case found that, in very limited circumstances, courts could intervene in arbitrations, it did so by relying on FAA sections discussing post-award procedures. *Id.* at 382 (citing 9 U.S.C. § 10). It also reached this conclusion while specifically addressing the power of courts "to defend their judgments as *res judicata*, including the power to enjoin or stay" arbitrations subsequent to a court's entry of judgment in a matter. *Id.* It noted that the court's power to enjoin an arbitration after federal court litigation arose from the conclusion that "no other forum provides an adequate substitute for a court's action in protection of its own judgment." *Id.* (citing *McDonald v. City of West Branch, Mich.*, 466 U.S. 284, 104 S.Ct. 1799 (1984)).

5

Based on the AAA rules, the FAA, and the relevant caselaw, this Court concludes that it does not have the authority to intervene at this stage to overturn a decision by the AAA not to disqualify an arbitrator.

## III.   IRREPARABLE HARM

Even if the Court had the authority to enjoin the arbitration, the plaintiffs have failed to establish that the Court *should* do so.

Courts consider four factors when evaluating a motion for a temporary restraining order ("TRO") or a preliminary injunction: "(1) the threat of irreparable harm to the movant; (2) the state of the balance between this harm and the injury that granting the injunction will inflict on other parties litigant; (3) the probability that movant will succeed on the merits; and (4) the public interest." *Dataphase Sys., Inc. v. C L Sys., Inc.*, 640 F.2d 109, 113 (8th Cir. 1981).  But "[t]he failure to demonstrate irreparable harm is an independently sufficient ground to deny injunctive relief." *Jackson v. Macalester Coll.*, 16-cv-0448 (WMW/BRT), 169 F. Supp. 3d. 918, 921 (D. Minn. 2016) (citing *Watkins, Inc. v. Lewis*, 346 F.3d 841, 844 (8th Cir. 2003)); *see also Grasso Enter., LLC v. Express Scripts, Inc.*, 809 F.3d 1033, 1040 (8th Cir. 2016) (affirming denial of motion for preliminary injunction where no irreparable harm shown); *Medtronic, Inc. v. Ernst*, 16-cv-244 (JRT/HB), 182 F. Supp. 3d 925, 934-35 (D. Minn. 2016) (denying motion for a temporary restraining order where no irreparable harm shown); *Tokarz v. Mortg. Elec. Registration Sys., Inc.*, 17-cv-1022 (WMW/KMM), 2017 WL 3425697, at *1 (D. Minn. Aug. 9, 2017) (denying emergency injunctive relief where no irreparable harm shown).

Irreparable harm occurs when a party's injuries cannot be fully compensated by damages, rendering any available remedy inadequate. *Gen. Motors Corp. v. Harry Brown's, LLC*, 563 F.3d 312, 319 (8th Cir. 2009).  "In order to demonstrate irreparable harm, a party must show that the harm is certain and great and of such imminence that there is a clear and present need for equitable relief." *Novus Franchising, Inc. v. Dawson*, 725 F.3d 885, 895 (8th Cir. 2013).  "Possible or speculative harm is not enough." *Graham Webb Intern. V. Helene Curtis Inc.*, 98-cv-603 (DSD/JMM), 17 F. Supp. 2d 919, 924 (D. Minn. 1998).

Against this backdrop, the plaintiffs are unable to establish that irreparable harm will occur absent the Court's intervention.  The plaintiffs argue that Mr. Murray will expend substantial resources on the arbitration if it goes forward as planned.  Mem. in Supp. at 15.  Even if the Court later disqualifies the arbitrator, Mr. Murray will not only have to expend additional resources for a second arbitration, but he might be put at the back of a long line of scheduled arbitrations; what is supposed to be an expedient process will drag on for years.  *Id.*  The plaintiffs suggest that

Mr. Murray himself may be unavailable to pursue his claims if delayed, and witnesses will potentially become unavailable as well. Neither the possibility for delay or expense constitutes "great" or "imminent" harm.

The plaintiffs have shown only that, in the absence of an injunction, they will suffer the ordinary inconvenience any litigant experiences by having to wait for a final decision to raise issues on appeal. In all cases, if an appeal succeeds and additional proceedings are required, an appellant will experience precisely the type of delay and potential additional expense that the plaintiffs complain of here. However, the plaintiffs cite no authority for the argument that such inconveniences constitute irreparable harm. The possibility of a delayed arbitration simply does not constitute the sort of irreversible damage required for emergency relief. For these reasons, the plaintiffs fail to satisfy the threshold *Dataphase* factor, and injunctive relief is inappropriate.

Though it need not reach any of the other *Dataphase* factors, the Court notes its skepticism that the plaintiffs would succeed on the merits of a motion to disqualify the arbitrator. The AAA has clearly determined that the arbitrator does not have a conflict of interest and therefore did not fail to disclose one. Snyder Dec., ¶ 15, Exs. L, N. The relationship alleged by the plaintiffs to constitute a conflict of interest is tenuous, particularly when compared to the conflicts at issue in the decisions relied upon by the plaintiffs. Mem. in Supp. at 20-21 (citing *Olson v. Merrill Lynch, Pierce, Fenner, & Smith, Inc.,* 51 F.3d 157, 159 (8th Cir .1995) (vacating an award on the grounds of partiality where two of three arbitrators on a panel had not disclosed their employers' ongoing business relationships with one of the parties); *Morelite Constr. Corp. v. N.Y.C. Dist. Council Carpenters Ben. Funds*, 748 F.2d 79 (2d Cir. 1984) (involving "a father-son relationship between an arbitrator and the President of an international labor union, a district union of which is a party to the arbitration"); *SOMA Partners, LLC v. Nw. Biotherapeutics, Inc.*, 838 N.Y.S.2d 519 (N.Y. App. 1st Dep't 2007) (finding partiality where an arbitrator's law firm colleague was on the board of an organization that had investment relationships with a related nonparty and knew one of the two witnesses called). But even if the plaintiffs have a stronger claim regarding disqualification than it appears at first blush, that claim is only properly brought to this Court after the arbitration is complete. Because the Court need not fully resolve this factor to determine that the plaintiffs have failed to satisfy the *Dataphase* test, the Court need not further wade into the allegations of improper bias on the part of Ms. Close.

## RECOMMENDATION

Based on the foregoing, the Court recommends that plaintiff's Motion for Temporary Restraining Order and Preliminary Injunction (**ECF No. 109**) should be

**DENIED.  The Court, having found no basis to grant the relief sought by the plaintiffs, is expressly declining to enjoin or postpone in any way the arbitration scheduled for January 29, 2018.**

Date: January 26, 2018

                                               *s/Katherine Menendez*
                                                Katherine Menendez
                                                United States Magistrate Judge

## NOTICE

**Filing Objections:**  This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the Report and Recommendation.  A party may respond to those objections within 14 days after being served a copy of the objections.  LR 72.2(b)(2).  All objections and responses must comply with the word or line limits set for in LR 72.2(c).

**Under Advisement Date:**  This Report and Recommendation will be considered under advisement 14 days from the date of its filing.  If timely objections are filed, this Report and Recommendation will be considered under advisement from the earlier of: (1) 14 days after the objections are filed; or (2) from the date a timely response is filed.